# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Bonhomme v. St. James**, 2012 IL 112393

---

| | |
|---|---|
| Caption in Supreme Court: | PAULA BONHOMME, Appellee and Cross-Appellant, v. JANNA ST. JAMES, Appellant and Cross-Appellee. |
| Docket Nos. | 112393, 112398 cons. |
| Filed | May 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where, on the internet, plaintiff began a romantic relationship with someone she had never met who was, in fact, posing as a man, these facts did not plead the tort of fraudulent representation, which is confined to business and financial transactions; and plaintiff's third amended complaint alleging only this tort waived her other claims which were not referenced in it. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Robert B. Spence, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Phyllis J. Perko, of The Law Offices of Harlovic & Perko, of West
Dundee, for appellant and cross-appellee St. James.

Daliah Saper and Adam E. Urbanczyk, both of Chicago, for appellee and
cross-appellant Bonhomme.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke,
and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Paula Bonhomme, filed a seven-count second amended complaint against defendant, Janna St. James, for damages resulting from a fraudulent Internet-based relationship that defendant allegedly maintained with plaintiff for nearly two years. The circuit court of Kane County dismissed with prejudice all of plaintiff's counts except fraudulent misrepresentation, which it dismissed without prejudice. Plaintiff then filed a third amended complaint alleging a single count of fraudulent misrepresentation, and the trial court dismissed that complaint with prejudice, as well. Plaintiff appealed, and the appellate court unanimously affirmed the dismissal of the second amended complaint and, with one justice dissenting, reversed the dismissal of the third amended complaint. 407 Ill. App. 3d 1080. Both sides filed petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), which this court allowed and consolidated for review.

¶ 2                               BACKGROUND

¶ 3     The following facts were alleged in plaintiff's third amended complaint and are set forth in the appellate court's opinion. In April 2005, plaintiff, a resident of Los Angeles, California, began online conversations with defendant on the "Deadwood Boards," an Internet chatroom dedicated to the HBO television series "Deadwood." Defendant, a resident of Batavia, Illinois, had registered as a user of the site under the name "Ms. Magnolia." In June, defendant registered again, posing as a man named Jesse James (Jesse) and under the user name of "Auboy." Jesse began chatting with and emailing plaintiff in July 2005. Defendant, in her own name, also began emailing plaintiff in July. Defendant represented to plaintiff that she knew Jesse and many of the people in Jesse's life.

¶ 4     Plaintiff and Jesse began an online romantic relationship that lasted until July 2006. In addition to exchanging emails, Jesse and plaintiff exchanged personal photos, handwritten letters, and gifts. They also spoke regularly on the telephone, with defendant using a voice-altering device to disguise her female voice.

¶ 5     During this same period, defendant continued to maintain a relationship under her own name with plaintiff. In addition, defendant created a universe of approximately 20 fictional

-2-

online characters either related to or involved with Jesse, including an ex-wife, a son, various family members, a therapist, and friends living both in the United States and abroad. These characters communicated with plaintiff from separate and distinct email accounts and even sent photos, handwritten mail, and packages from different states and foreign countries. For her part, plaintiff sent gifts totaling more than $10,000 to defendant, Jesse, and various other characters.

¶ 6    In September 2005, plaintiff purchased round-trip airline tickets from Burbank, California, to Denver, Colorado, for the purpose of meeting Jesse in person. Jesse, however, cancelled the plans. Shortly thereafter, defendant informed plaintiff that Jesse had attempted suicide. This caused plaintiff great emotional distress, and plaintiff began seeing a therapist, with bills totaling more than $5,000.

¶ 7    In April 2006, plaintiff and Jesse decided to move in together in Jesse's Colorado home. The move was to take place in July 2006, and plaintiff spent approximately $700 preparing for the anticipated move. When July came, however, plaintiff was informed by Jesse's "sister," Alice, that Jesse had died of liver cancer. Posing as her other fictional characters, defendant sent plaintiff several letters of condolence. Plaintiff entered a deep depression at this point, experiencing headaches, exhaustion, inability to sleep, and inability to focus on job-related tasks. She also contracted a recurring infection known as MRSA (multidrug resistant staphylococcus aureus) because her immune system was so weakened.

¶ 8    Yet even after Jesse's death, defendant stayed in touch with plaintiff, communicating with her on a daily basis for the next seven months. In September 2006, plaintiff and defendant met in Colorado to visit some of Jesse's favorite places, after which they drove to New Mexico to visit other Jesse-related sites. During that trip, defendant gave plaintiff a letter that Jesse had written in which he professed his love for plaintiff and set out his dying wishes.

¶ 9    In February 2007, defendant visited plaintiff at her home in California. Plaintiff spent $1,000 preparing her home for defendant. The expenses included the purchase of an inflatable bed and linens and the installation of a handrail, sliding chair, and "medical bath assist devices." It was during this trip that some of plaintiff's actual friends discovered the fictional nature of the universe of people that defendant had created, and they confronted defendant. Defendant admitted on videotape that she had put plaintiff through an "emotional ringer [*sic*]" for "maybe a year and a half." Plaintiff continued to see a therapist to deal with the emotional aftermath of the false statements regarding the existence of the fictional characters, and her therapy bills continued to accumulate. Her "affected mental state" also resulted in lost earnings.

¶ 10    Plaintiff filed a five-count complaint against defendant in February 2008. Her second amended complaint contained seven counts, including both intentional and negligent infliction of emotional distress, defamation *per se* and *per quod*, negligent defamation, fraudulent misrepresentation, and false light. Defendant moved to dismiss the second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), and the trial court dismissed with prejudice all of plaintiff's counts except fraudulent misrepresentation, which it dismissed without prejudice. Plaintiff filed a motion to reconsider, which the trial court denied.

¶ 11    Plaintiff then filed a motion requesting either a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006) or, alternatively, an order certifying four questions of law pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994). On the same day, plaintiff filed a notice of appeal from the trial court's denial of her motion to reconsider. In that notice of appeal, plaintiff explained that, while the trial court had yet to rule on her pending motions, she was submitting the notice "to apprise the Courts of the procedural posture of this case." On September 15, 2009, the trial court denied plaintiff's motions, and plaintiff thereupon withdrew her notice of appeal and instead filed a third amended complaint, alleging a single count of fraudulent misrepresentation. Defendant again moved to dismiss pursuant to section 2-615, and the trial court dismissed plaintiff's third amended complaint with prejudice.

¶ 12    Plaintiff appealed. On appeal, plaintiff attempted to challenge not only the dismissal with prejudice of her third amended complaint but also the dismissal with prejudice of the emotional distress and defamation counts from her second amended complaint. A divided appellate court affirmed in part and reversed in part. 407 Ill. App. 3d 1080. As to the counts dismissed from the second amended complaint, the appellate court unanimously affirmed on the grounds that plaintiff abandoned those counts by neither realleging nor incorporating them in her third amended complaint. *Id.* at 1083. As to the dismissal of the third amended complaint, a majority of the appellate court reversed, explaining that "plaintiff properly pleaded a cause of action for fraudulent misrepresentation in count I of her third amended complaint" and that the trial court therefore "erred in dismissing that complaint." *Id.* at 1088. Justice Schostok dissented on this point, arguing both that "[i]t is not appropriate to expand the application of fraudulent misrepresentation to the facts in this case" and that, even if such expansion were appropriate, "plaintiff has not pleaded facts sufficient to establish the element of justifiable reliance." *Id.* at 1088 (Schostok, J., concurring in part & dissenting in part).

¶ 13    Both parties filed petitions for leave to appeal (Ill. S. Ct. R. 315), which we allowed and consolidated for review.

¶ 14                                    DISCUSSION
¶ 15    Before this court, both sides contest some portion of the appellate court's discussion. Plaintiff argues that the appellate court erred in concluding that she abandoned the counts that were dismissed with prejudice from her second amended complaint. Defendant, in turn, argues that the appellate court erred in reversing the trial court's dismissal of plaintiff's third amended complaint. We will address plaintiff's argument first.

¶ 16                                    Abandonment
¶ 17    The rules governing the preservation of dismissed claims for purposes of appellate review are clear and well settled. This court has clearly and consistently explained that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints," and " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n*

*v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983) (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)); see also *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384 (1996) (holding same). Whether a dismissed claim has been preserved for review is strictly a question of law, and our review therefore is *de novo*. See *People v. Gutierrez*, 2012 IL 111590, ¶ 16.

¶ 18    In *Barnett*, for example, the plaintiff initially filed a complaint containing wrongful-death and survival counts sounding in both negligence and willful and wanton misconduct. The negligence counts were dismissed from the plaintiff's second amended complaint, and the plaintiff proceeded to file third, fourth, and fifth amended complaints alleging only willful and wanton misconduct. The trial court ultimately entered summary judgment for the defendant, and the plaintiff appealed. *Barnett*, 171 Ill. 2d at 383. In this court, the plaintiff attempted to argue, *inter alia*, that the trial court erred in dismissing the negligence claims from her second amended complaint. This court refused to consider that argument, however, explaining that "[a]llegations in a former complaint not incorporated in the final amended complaint are deemed waived." *Id.* at 384. Thus, by "proceed[ing] on her willful and wanton counts alone" and by failing to "reallege or otherwise incorporate those [negligence] counts in her third, fourth, or fifth amended complaint," the plaintiff had "waived appellate review of the dismissal of the negligence counts." *Id*.

¶ 19    We see no material distinction between the facts presently before us and those present in *Barnett*. Here, plaintiff filed a second amended complaint containing seven counts: intentional and negligent infliction of emotional distress, defamation *per se* and *per quod*, negligent defamation, false light, and fraudulent misrepresentation. On defendant's motion, the trial court dismissed with prejudice all of these but fraudulent misrepresentation, which it dismissed without prejudice. Plaintiff then filed a single-count third amended complaint that alleged only fraudulent misrepresentation and in no way referenced or incorporated any of the other six counts. When her third amended complaint was likewise dismissed with prejudice, plaintiff appealed, and she now attempts to argue that the trial court erred in dismissing the emotional distress and defamation counts from her second amended complaint. *Barnett* precludes any such argument. Indeed, just as in that case, by electing to proceed on fraudulent misrepresentation only, and by filing a third amended complaint that neither referenced nor incorporated any of the previously dismissed counts, plaintiff here effectively abandoned and withdrew those counts and in so doing waived any appellate review of their dismissal. The law could not be clearer on this point.

¶ 20    In opposition to this result, plaintiff first argues that, although her third amended complaint fails to reference or incorporate the emotional distress and defamation counts that were dismissed with prejudice from her second amended complaint, she nevertheless took other steps that were effective to preserve her objections to the dismissal of those counts. Specifically, plaintiff points out that, following the trial court's dismissal of her second amended complaint, she immediately filed a motion to reconsider that dismissal. When the trial court denied that motion, she filed a motion for Rule 304(a) findings and Rule 308(a) certification, as well as a notice of appeal. Although she later withdrew that notice of appeal and elected instead to file a one-count third amended complaint, she nevertheless insists that her initial notice of appeal "legally and literally" incorporated the counts that were dismissed with prejudice from her second amended complaint and "thereby preserved them."

-5-

¶ 21     The problem with this argument is that we rejected one very similar to it in *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88 (1995). In *Boatmen's*, the decedent's father, as special administrator of the decedent's estate, brought a series of amended complaints against the defendants. All of these complaints were brought on behalf of decedent's "next of kin," and the first through seventh amended complaints attempted to include decedent's parents and siblings within that classification. The trial court dismissed each of those complaints on the grounds that, because the decedent was married at the time of death, it was her husband, and not her parents or siblings, who was "next of kin" for purposes of the Wrongful Death Act. In the end, the estate filed eighth and ninth amended complaints that were brought solely on behalf of the decedent's husband. The cause eventually proceeded to trial, and the estate appealed. *Id*. at 91-96.

¶ 22     In this court, the estate attempted to argue, *inter alia*, that the trial court erred in concluding that the decedent's parents and siblings were not "next of kin." *Boatmen's*, 167 Ill. 2d at 98. Citing *Foxcroft*, this court found that, by filing eighth and ninth amended complaints that did not reference or incorporate the claims brought on behalf of the decedent's parents and siblings, the estate "waived any objection to the trial judge's dismissal" of those claims. *Id*. at 99. More importantly for present purposes, the court emphasized that this was the result even though the estate "continued to challenge the trial judge's ruling regarding *** the claims for recovery by decedent's parents and siblings," both by including those claims in its motion for a new trial and in its objections to a motion *in limine*. *Id*. at 100. As *Foxcroft* made clear, this court "adhere[s] to the principle that a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Id*. at 100. Consequently, once the estate filed eighth and ninth amended complaints identifying only the decedent's husband as her "next of kin," it forfeited any objections to the trial court's prior rulings concerning the status of decedent's parents and siblings, and not even its ongoing objections to those rulings could "preserve [the] issues for review." *Id*. at 100.

¶ 23     In this case, we are faced with similar facts. Again, plaintiff filed a second amended complaint containing seven counts. On defendant's motion, the trial court dismissed with prejudice all but fraudulent misrepresentation, which it dismissed without prejudice. Plaintiff then filed a single-count third amended complaint that alleged only fraudulent misrepresentation and in no way referenced or incorporated any of the other six counts. To be sure, plaintiff took some steps to register her objection to the trial court's dismissal of the other six counts, and we recounted those steps above. But as *Boatmen's* teaches, once plaintiff took the step of filing a third amended complaint sounding solely in fraudulent misrepresentation, none of those other actions were effective to preserve those objections. We repeat, unless the amended pleading somehow incorporates or references the pleadings in the former complaint, "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Boatmen's*, 167 Ill. 2d at 99.

¶ 24     Plaintiff also argues that application of the waiver rule is inappropriate in this case because, in filing the one-count third amended complaint, she was simply "follow[ing] the Circuit Court's instructions at all times" and therefore "should not be punished for any misdirection she received." In support of this argument, plaintiff insists that "the Circuit Court made it clear that it wanted Plaintiff to file a third amended complaint stating only one

count of fraudulent misrepresentation and *then* appeal all the dismissed claims." (Emphasis in original.)

¶ 25    There are two problems with this argument. The first and most fundamental is that the record in no way supports plaintiff's factual assertions concerning the trial court's "instructions." The portion of the record that plaintiff cites in support of these assertions is an order dated September 15, 2009. That order states, in its entirety:

> "Plaintiff's Motion for Findings under Supreme Court Rules 304a or, in the alternative, 308a is denied. Prior scheduling order to stand."

Nothing in this language amounts to an instruction, "clear" or otherwise, to file a third amended complaint containing only a single count of fraudulent misrepresentation. In fact, quite the opposite is true. The "prior scheduling order" referred to in the order above was entered on August 27, 2009, and it states, in its entirety:

> "Plaintiff shall have 28 days to file a Third Amended Complaint (on or by September 24, 2009); Defendant shall have 21 days thereafter to plead to said Third Amended Complaint (on or by October 15, 2009)."

Contrary to plaintiff's representations, this order *places no restrictions whatsoever* on what the third amended complaint may plead, reference, or incorporate, and neither it nor the September 15 order precluded plaintiff from incorporating her emotional distress and defamation claims by reference so as to preserve her arguments on review. The decision not to plead that way was entirely plaintiff's, and we take exception to plaintiff's repeated attempts to shift responsibility for that decision to the trial court.

¶ 26    That said, even *had* the trial court instructed plaintiff to appeal the dismissal of her defamation and emotional distress counts only after filing her third amended complaint, her argument would remain unavailing. Indeed, the estate in *Boatmen's* made a similar argument, and this court rejected it out of hand. In *Boatmen's*, the trial court expressly assured the estate that, despite the denial of the estate's motion to reconsider the dismissal of one of its claims, the estate's arguments relative to that claim "would be preserved for review." *Boatmen's*, 167 Ill. 2d at 100. In reliance on this, the estate filed subsequent amended complaints that neither referenced nor incorporated the dismissed claim. On appeal, this court held that, by filing subsequent amended complaints that neither referenced nor incorporated the dismissed claim, the estate had waived any objections to the dismissal of that claim. *Id*. at 99. Not only that, but this court went out of its way to note that even the trial court's express assurance that the estate's objections were in fact preserved for review "does not preclude a finding of waiver." *Id*. at 100. On the contrary, a party "should not be excused from following rules intended to preserve issues for review by relying on a trial court's erroneous belief that an issue was properly preserved for review." *Id*. Thus, even assuming that the trial court in this case *had* instructed plaintiff to file a one-count third amended complaint and only then appeal the dismissal of her other six counts, plaintiff could not treat that instruction as license to ignore *Foxcroft*. On the contrary, if plaintiff wished to challenge on appeal the trial court's dismissal of her emotional distress and defamation claims, it was incumbent upon her to

somehow reference or incorporate those counts in her third amended complaint.[1] Having failed to do so, plaintiff has waived any such challenges.

¶ 27 Finally, plaintiff argues that application of the waiver rule is inappropriate in this case because none of the policy concerns that inform the *Foxcroft* rule are present. More specifically, plaintiff argues that, because her motion to reconsider, her motion for Rule 304(a) findings or a Rule 308 certification, and her initial notice of appeal all referenced the six counts that were dismissed with prejudice from her second amended complaint, "neither the court nor the Defendant will have to speculate as to which legal theories or claims Plaintiff intends to advance."

¶ 28 We disagree. In *Foxcroft*, this court explained that there are "significant policy considerations" that favor adherence to the waiver rule, most notably "the interest in the efficient and orderly administration of justice." *Foxcroft*, 96 Ill. 2d at 154. To this end, "[i]t is expected that a cause will proceed to trial on the claims as set forth in the final amended complaint," as "[n]o interest would be served by requiring the judge to speculate as to which legal theories or claims a party intends to advance during trial." *Id*. Similarly, "[t]he complaint notifies the defendant of the alleged causes of action and theories of recovery," and "[w]hen a complaint is amended, without reference to the earlier allegations, it is expected that these allegations are no longer at issue." *Id*. Accordingly, permitting a plaintiff to "proceed to trial on different issues contained in separate complaints" would certainly disadvantage defendants, whereas there is "no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review." *Id*.

¶ 29 Plaintiff's argument to the contrary notwithstanding, not only are these policy concerns not absent from this case, each of them is present. Again, plaintiff's third amended complaint is utterly silent as to the six counts that were dismissed from her second amended complaint. Thus, there is simply no objective indication anywhere in the record as to which, if any, of those counts plaintiff intends to pursue. Maybe all, maybe some, or maybe none. As it stands, only plaintiff knows for sure. And while the trial court and defendant may be able to hazard an informed and perhaps even accurate guess, that is not a position either of them should ever have to be in. Stated differently, had plaintiff intended to abandon the six counts that were dismissed with prejudice from her second amended complaint, the record in this case might very well look exactly the same. Again, the purpose of the *Foxcroft* rule is to ensure that the court and the defendant possess objective means of knowing with certainty which claims the plaintiff is pursuing, as well as to ensure that a cause proceeds to trial only on the claims contained in the final amended complaint. Allowing plaintiff to proceed on any of the six counts that were dismissed with prejudice from her second amended complaint would

---

[1] The burden for accomplishing this is not onerous. Indeed, our appellate court has for some time recognized that "[a] simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff [is] preserving the dismissed portions of [the] former complaints for appeal" is sufficient to avoid the consequences of *Foxcroft*." *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996); see also *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 719 (2010); *Zawadzka v. Catholic Bishop of Chicago*, 337 Ill. App. 3d 66, 70 (2003).

undermine both of these principles, and it would open the door to piecemeal and disorderly litigation where no one but the plaintiff would ever know for certain which claims are ultimately at issue.

¶ 30     On this last point, we note that plaintiff's own pleadings in this case illustrate the confusion that can ensue when *Foxcroft* is ignored. In her motion to reconsider the trial court's order dismissing the second amended complaint, plaintiff defended all seven counts of that complaint. In her motion for Rule 304(a) findings and Rule 308(a) certification, plaintiff sought permission to appeal the trial court's dismissal of counts I, II, III, IV, V, and VII of the second amended complaint. And in both of her notices of appeal, which of course are filed in the trial court, plaintiff indicated that she would be appealing the trial court's dismissal of counts I, II, III, IV, V, and VII of the second amended complaint. Despite all of this, plaintiff insists to this court she has only ever attempted to preserve counts I through IV of her second amended complaint, and that both defendant and the trial court clearly understood this. According to plaintiff's opening brief, "[a]t all times subsequent to the Circuit Court's dismissal of *Counts I-IV* of Plaintiff's Second Amended Complaint, Plaintiff has intended, as the Circuit Court and Defendants understood, to appeal *those dismissals*." (Emphases added.) In the same vein, plaintiff concludes her opening brief in this court by insisting that she has "doggedly pursued *** the claims understood by both parties and the Court to be at issue: *Counts I-IV of the Second Amended Complaint* and Count I of the Third Amended Complaint." (Emphasis added.) Thus, according to plaintiff, although every relevant trial court pleading expressly states that plaintiff was or would be contesting the dismissal of counts I, II, III, IV, V, and VII from the second amended complaint, both defendant and the trial court somehow and nevertheless understood that in fact only counts I through IV of that complaint remained at issue. This is precisely the type of uncertainty that *Foxcroft* exists to avoid, and it underscores our resolve to enforce that decision in this case.

¶ 31     In sum, plaintiff's third amended complaint pleaded a single count of fraudulent misrepresentation. That complaint was "complete in itself" and "[did] not refer to or adopt" any of the six previously dismissed claims. As a result, and consistent with nearly 50 years of unbroken jurisprudence from this court, plaintiff has "in effect abandoned and withdrawn" those six claims, and our consideration of the dismissal of those claims "may be at once eliminated from the appeal." See *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963).

¶ 32                    Fraudulent Misrepresentation

¶ 33     We now turn to defendant's argument that the appellate court erred in reversing the trial court's dismissal of plaintiff's third amended complaint, which alleged a single count of fraudulent misrepresentation.

¶ 34     A motion to dismiss brought under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) attacks the legal sufficiency of a complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts in the complaint, as well as all reasonable inferences therefrom. *Id*. The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Id*. Orders granting a section 2-615 motion to dismiss are reviewed *de novo*. *Id*.

¶ 35    To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 228 Ill. 2d 324, 342-43 (2008). In *Doe*, this court exhaustively examined the history and scope of fraudulent misrepresentation, and we need not repeat that discussion here. Suffice it to say, the history and origin of this tort lie in the common law action of deceit, a very narrow tort that applies only to cases involving business or financial transactions between parties. *Id*. at 343. And while the courts of this state have, on rare occasions, recognized claims for fraudulent misrepresentation in settings that are not, strictly speaking, "commercial" or "financial" in nature (see, *e.g.*, *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119 (2003); *Roe v. Catholic Charities of the Diocese of Springfield*, 225 Ill. App. 3d 519 (1992)), they have never recognized fraudulent misrepresentation in a setting that is "purely personal" in nature (*Doe*, 228 Ill. 2d at 348).

¶ 36    In *Doe*, the plaintiff sought to hold the Dillings liable for their alleged failure to disclose and alleged misrepresentation of the HIV status of their adult child. In this court, the threshold question was whether the appellate court properly extended the cause of action for fraudulent misrepresentation "beyond its traditional application in commercial and transactional settings." *Id.* at 342. In support of the appellate court's decision stating that it could, the plaintiff in *Doe* argued that this issue had already been settled. Citing *Jewish Children's Bureau* and *Catholic Charities*, two cases involving adoption agencies, the plaintiff argued that "two prior Illinois decisions have previously recognized the tort of fraudulent misrepresentation in seemingly noncommercial settings," that "this is no longer an issue of first impression," and that "Illinois has already expanded the tort of fraudulent misrepresentation outside of the business arena." *Id*. at 346.

¶ 37    This court rejected the *Doe* plaintiff's argument, explaining that "[a] close examination of the two cases relied upon by Doe *** does not support her broad interpretation of those decisions." *Id*. at 346. The court explained that, contrary to the plaintiff's argument, agency-assisted adoption is not a "purely personal" setting. On the contrary, the defendants in those cases were agencies "in the business of facilitating adoptions." *Id.* at 347-48. Moreover, adoptions are highly regulated proceedings in which the state has a strong public policy interest. *Id*. at 348. In light of this, the court concluded that "these decisions [do not] support Doe's argument that Illinois has recognized the tort of fraudulent misrepresentation in purely personal settings," and that the appellate court therefore "incorrectly expanded the tort of fraudulent misrepresentation *** beyond its general historical application to cases arising in the commercial context." *Id*. at 348, 350-51.

¶ 38    In light of *Doe*, the crucial question in this case is whether the facts at issue are purely personal in nature, or whether there exists some commercial, transactional, or regulatory component that moves them beyond the purely personal. This is not a difficult question to answer. When all is said and done, what lies beneath this case is two private persons engaged in a long-distance personal relationship. To be sure, it was a personal relationship built wholly on one party's relentless deceit, but it was a purely personal relationship nonetheless. Indeed, all of the hallmarks of ordinary human relationship are present: correspondence, conversation, intimacy, trust, mutual beneficence, emotional support, affection,

-10-

disappointment, and even grief. And just as importantly, there is absolutely nothing of the commercial, transactional, or regulatory at work. Plaintiff and defendant were not engaged in any kind of business dealings or bargaining, and the veracity of representations made in the context of purely private personal relationships is simply not something the state regulates or in which the state possesses any kind of valid public policy interest. Consequently, as regrettable as the alleged facts are, we hold that they are not the types of facts upon which a claim for fraudulent misrepresentation may be pled.[2]

¶ 39　　For these reasons, we hold that the appellate court below erred in reversing the trial court's order dismissing plaintiff's third amended complaint.

¶ 40　　　　　　　　　　　　　　CONCLUSION

¶ 41　　For the reasons set forth above, we affirm that portion of the appellate court's decision affirming the dismissal of defendant's second amended complaint, reverse that portion of the appellate court's decision reversing the dismissal of plaintiff's third amended complaint, and affirm the judgment of the circuit court in its entirety.

¶ 42　　Appellate court judgment affirmed in part and reversed in part.

¶ 43　　Circuit court judgment affirmed.

---

[2]In reaching this result, we reiterate what we said in *Doe*, namely, that "if the tort of fraudulent misrepresentation is not recognized for a certain fact pattern, this does not necessarily mean that a plaintiff is left without a remedy for his or her injuries, as other tort actions may be available." *Doe*, 228 Ill. 2d at 344-45. On this point, our appellate court has correctly explained that, although not every misrepresentation gives rise to a cause of action for fraudulent misrepresentation, misrepresentations themselves often play a large role in a variety of other torts. See *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 185 (2003).