2022 IL App (2d) 200017-U
No. 2-20-0017
Order filed March 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SUSAN BEESON MENTGEN, as Trustee of the May H. Beeson Trust, dated May 19, 1992, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | |
| v. | ) | No. 17-LA-402 |
| | ) | |
| CHARLES F. DOWELL, ROXANN DOWELL, PAT BETLINSKI, BERKSHIRE HATHAWAY HOME SERVICES STARCK REAL ESTATE, an Illinois corporation, CODY BOOK, LISA HADERLEIN, and THE LAND CONSERVANCY OF MCHENRY COUNTY, an Illinois not-for-profit corporation, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) ) | |
| | ) | |
| (Charles F. Dowell, Roxann Dowell, Pat Betlinski, Berkshire Hathaway Home Services Starck Real Estate, an Illinois corporation, and Cody Book, Defendants-Appellees). | ) ) ) ) ) ) | Honorable Thomas Meyer, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Plaintiff failed to properly preserve for appeal the issues of whether the trial court erred in dismissing counts I, II, V, and VII of her Amended Complaint; plaintiff filed a Second Amended Complaint that changed the allegations of those counts instead of one that realleges, incorporates by reference, or refers to the dismissed counts; (2) the trial court erred in dismissing counts alleging unjust enrichment and breach of fiduciary duty; (3) trial court affirmed in part, reversed in part, and the cause remanded for further proceedings.

¶ 2    Plaintiff, Susan Beeson Mentgen, as Trustee of the May H. Beeson Trust dated May 9, 1992 (Trust), appeals from (1) the trial court's dismissal of various counts of her amended and second-amended complaints and (2) the trial court's denial of her motion to reconsider and motion for leave to file a second-amended complaint against certain defendants.  We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4    The facts herein are drawn from the factual allegations contained in Mentgen's Second Amended Complaint.  The Trust is the former owner of a 120-acre parcel of property in Harvard, Illinois.  More than 60 acres of the property had been used as a nursery and for land conservation purposes.  In 2009, the Trust conveyed a conservation easement on the property to defendant, The Land Conservancy of McHenry County (TLC), a nonprofit land trust whose purpose includes the conservation of farmland.  The reason for the grant of the easement was two-fold: (1) to preserve the property in its current condition; and (2) an income tax deduction.  An appraisal of the property done for income tax purposes revealed a value of $1,200,000 before the implementation of the easement and a value of $600,000 after implementation.  This appraisal was accepted by the Internal Revenue Service for tax deduction purposes.

¶ 5    The easement provided in relevant part that 75 acres of the property was utilized for nursery, 40 acres remained native forest, woodland, and savanna in predominantly natural condition, and 5 acres contained all the buildings.  The property possessed "natural and scenic values (collectively 'Conservation Values')" that were "of great importance to Grantors, the people

of McHenry County and the people of the State of Illinois." The "Conservation Purpose" of the easement included the preservation of the conservation values by continuing the land use patterns existing at the time of the grant. The easement expressly prohibited "any activity on or use of the Property inconsistent with the purpose of this Easement." Amongst other things, it specifically prohibited any alteration of the surface topography and hydrology of the land, any use or activity that causes or is likely to cause significant soil degradation or erosion, and "row cropping of corn, soybeans or other commodity grains". TLC was to manage the property according to the attached Management Plan, which could be amended or modified. However, no amendment or modification could "materially and adversely affect the conservation purpose" of the Easement. Any modification was required to be in a written instrument signed by the Grantors and Grantees and recorded.

¶ 6    Following the death of May Beeson, the property was the subject of a lawsuit involving the Beeson siblings, including Mentgen. The suit resulted in a judgment that the easement remain in effect and that the property be listed for sale to the general public. Both the listing and sales prices were to be set and approved by the court, and any sales contract was subject to the court's acceptance. In April 2015, the court selected defendants Pat Betlinski and Berkshire Hathaway Home Services Starck Real Estate (Berkshire) to list and sell the property and approved a listing price of $724,900.

¶ 7    Over a year later, in July 2016, Betlinski filed an updated market analysis stating that marketing activity on the property was limited due to the easement's restrictions on row cropping of corn, soybeans or other commodity grains. According to the opinions of two appraisers, the easement decreased the value of the property by 50 % of current farmland prices, indicating a

current value of $465,000. The court decreased the price to $649,900, and later that year to $599,000.

¶ 8 In December 2016, Mentgen signed a Disclosure and Consent to Dual Agency, which notified her that Betlinski would be representing defendants Charles F. Dowell and Roxann Dowell as their real estate agent. In 2015, Betlinski had learned that the Dowells were interested in purchasing the property in order to lease it to their son-in-law, defendant Cody Book, to farm row crops, including corn. However, the Dowells were put off by the easement's prohibition of such farming.

¶ 9 Later that month, defendant Lisa Haderlein, executive director of TLC met with Book and the Dowells to discuss an Amended Management Plan that would allow Book to row crop the property. Haderlein verbally approved an amended plan that would allow the removal of all the trees in the nursery area, the leveling of the terraces, a buffer around the nursery area to allow the use of large motorized farm equipment, and a cyclical farming plan that allowed row crops if soil erosion was kept within tolerable erosion levels.

¶ 10 The Dowells submitted an offer of $300,000 for the property; negotiations eventually led, on February 2, 2017, to an agreed-upon purchase price of $470,000, subject to the easement and court approval. The easement, including the original Management Plan, was attached to the contract, and the parties initialed every page thereof. Mentgen had no information regarding the approval of the Amended Management Plan and alleged that she would not have agreed to the real estate contract at the sale price had she known of it. Betlinski knew of the amended agreement but never told Mentgen of it. The court approved the real estate contract on February 22. The sale closed on April 5, 2017; the trustee's deed specifically made the conveyance subject to the easement.

¶ 11 On April 8, Book brought in earth moving equipment and leveled, plowed and tilled the nursery area and planted row corn. On May 1, the TLC board confirmed Haderlein's approval of the amended management plan.

¶ 12 Mentgen filed a seven-count complaint, alleging: (1) fraudulent inducement against the Dowells; (2) breach of fiduciary duty against Betlinski and Berkshire; (3) consumer fraud against Betlinski and Berkshire; (4) tortious interference with contract against Book; (5) tortious interference with contract against Haderlein; (6) breach of fiduciary duty against Haderlein; and (7) civil conspiracy against the Dowells, Betlinski, Berkshire, Book and Haderlein. On July 25, 2018, the trial court granted without prejudice the defendants' motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)) and granted Mentgen leave to file an amended complaint.

¶ 13 Mentgen then filed an eight-count Amended Complaint, alleging: (1) fraudulent inducement against the Dowells; (2) fraudulent concealment against the Dowells; (3) breach of fiduciary duty against Betlinski and Berkshire; (4) consumer fraud against Betlinski and Berkshire; (5) tortious interference with contract against Book; (6) breach of fiduciary duty against Haderlein and TLC; (7) aiding and abetting against all of the defendants other than the Dowells; and (8) concert of action against all of the defendants other than the Dowells. The Dowells and Book brought a combined motion to dismiss pursuant to section 2-619(a)(9) and to strike pursuant to 2/615 of the Code (735 ILCS 2-619(a)(9), 5/2-615 (West 2016)) that the trial court granted on February 20, 2019, dismissing with prejudice all counts against the Dowells and Book. The court subsequently denied Mentgen's motion to reconsider and for leave to file a second-Amended Complaint against the Dowells and Book. The court also dismissed without prejudice all counts

against Betlinski, Berkshire, Haderlein and TLC and granted Mentgen leave to file a second-amended complaint against these defendants.

¶ 14    Mentgen filed a Second-Amended Complaint, captioning the first seven counts the same as the Amended Complaint and alleging the same defendants as before.  She then added a new count VIII; instead of re-alleging concert of action against all defendants, Mentgen alleged unjust enrichment against the Dowells.  The trial court subsequently granted the section 2-615 motion to dismiss with prejudice of the Dowells, Book, Betlinski, and Berkshire.  The trial court also granted a section 2-615 motion to dismiss Count VII as to Haderlein and TLC but denied the motion as to Count VI (breach of fiduciary duty against Haderlein and TLC).  The court found no just reason for delaying either enforcement or appeal.

¶ 15    Mentgen then filed her notice of appeal, appealing from: (1) the February 20, 2019 order dismissing with prejudice all counts against the Dowells and Book in the Amended Complaint; (2) the April 23, 2019 order denying her motion to reconsider the February 20, 2019 order and for leave to file a Second-Amended Complaint against the Dowells and Book; and (3) the December 11, 2019 order dismissing with prejudice all counts of the Second-Amended Complaint against the Dowells, Book, Betlinski, and Berkshire.

¶ 16                                    II. ANALYSIS

¶ 17    We will first address Mentgen's contention that the trial court erred in denying her motion to file a Second Amended Complaint against the Dowells and Book.  The trial court dismissed with prejudice all counts of the Amended Complaint against the Dowells and Book.  On April 23, 2019, the trial court entered an order denying Mentgen's combined motion to reconsider and for leave to file a Second Amended Complaint with counts against the Dowells and Book.  However, the motions to dismiss the Amended Complaint by Berkshire, Betlinski, TLC, and Haderlein were

not granted until the following month, at which time the trial court also ordered that Mentgen be granted leave to file a Second Amended Complaint. Mentgen's Second Amended Complaint contained, *inter alia*, newly amended counts I, II, V, and VII against the Dowells and Book along with a new count alleging unjust enrichment against the Dowells. The Dowells and Book filed a combined motion to dismiss the counts of the Second Amended Complaint pertaining to them, which the trial court granted after briefing and a hearing.

¶ 18    While the trial court may have denied leave to file second amended counts against the Dowells and Book, the record is clear that the court subsequently allowed such counts to be filed as part of the Second Amended Complaint and considered briefing and arguments on them in motions to dismiss. Therefore, this contention is without merit.

¶ 19    We must then address the status of the Second-Amended Complaint as it applies to the dismissed counts of the Amended Complaint against the Dowells and Book. When Mentgen filed her Second-Amended Complaint, she again included counts of fraudulent inducement and fraudulent concealment against the Dowells (I and II), tortious interference with contract against Book (V) and aiding and abetting (including Book) (VII).

¶ 20    A party who files an amended pleading waives any objection to the trial court's ruling on any prior complaints. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17. "[W]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." (Internal quotation marks omitted.) *Id.* This rule applies to theories of recovery as well as to factual allegations. *Fazekas v. City of De Kalb*, 2021 IL App (2d) 200692, ¶ 17. A party has three avenues for avoiding such waiver and preserving for appellate review any dismissed claims: (1) stand on the dismissed counts, voluntarily dismiss any remaining counts, and argue the matter before the

reviewing court; (2) file an amended pleading that realleges, incorporates by reference, or refers to the dismissed counts; or (3) perfect an appeal from the dismissal order prior to filing an amended pleading. *Id.* Where a party has failed to use one of these methods for avoiding forfeiture, ongoing objections to a dismissal order are insufficient to preserve the issue for appeal. *Bonhomme*, 2012 IL 112393, ¶¶ 20–22. This is true even where a party raises objections to a dismissal order in a motion to reconsider, in a motion for a new trial, or in motions *in limine*. *Id.* ¶¶ 20–23.

¶ 21    Here, counts I, II, V, and VII of the Second-Amended Complaint are not simple re-allegations of the dismissed counts from the Amended complaint. While alleging the same causes of action and defendants, the specific allegations, including the alleged damages suffered, have been changed. As Mentgen stated in her Motion to Reconsider and for Leave to File the Second-Amended Complaint:

> "49. The purposed [*sic*] 2nd Amended Complaint *changes the substance of the allegations* to address the Court's ruling of February 20, 2019 and adds a new count against the DOWELL defendants which should be allowed pursuant to 735 ILCS 5/2-616(a)." (Emphasis added.)

¶ 22    For example, Count I (Fraudulent Inducement) of the Amended Complaint alleged that The Dowells and Book obtained from Haderlein a "verbal *agreement\*\*\*to amend* [the] Management Plan" prior to the closing of the sale, while the same count of the Second Amended Complaint alleged that they obtained from Haderlein "verbal *approval\*\*\*for the Amended Management Plan\*\*\** which was contingent upon the DOWELLS becoming the contract purchasers and a crop rotation that had erosion level below tolerable levels" and that, because Mentgen "did not know or suspect that LISA HADERLEIN had already approved an Amended Management Plan\*\*\*, she never thought to ask for a copy of any Amended Management Plan prior to closing." (Emphases

added.)  The Second-Amended Complaint alleged that the subsequent approval of the Amended Management Plan by the TLC board was simply a rubber stamp of Haderlein's verbal agreement and that, according to the President of TLC, approval of an amended management plan by the board was not necessary.  The Amended Complaint contained no such allegations.

¶ 23    As Mentgen argued in her reply to the Dowells' and Book's response to her motion to reconsider and for leave to file, "The proposed 2nd Amended Complaint alleges new facts regarding damages which counsel for the plaintiff found after the hearing."  According to Mentgen, "the 2nd Amended Complaint changed the allegations of damages to correct the defect in the Amended Complaint raised by this Court at the hearing on the Motion to Dismiss the Amended Complaint."  The Amended Complaint sought approximately $470,000 in damages, the alleged "difference between the sale price and the value of the property with the provisions of the verbal agreement to amend the Management Plan."  The Second Amended Complaint sought $600,000 for that difference plus another $300,000 for the cost "to establish and defend the terms of the Conservation Easement which were violated by the Amended Management Plan."  These differences also affected counts II, V, and VII.

¶ 24    Further, the Second-Amended Complaint in no way refers to or adopts the dismissed pleadings from the Amended Complaint, thereby rendering the earlier pleadings "in effect abandoned and withdrawn." *Bonhomme*, 2012 IL 112393, ¶ 17.  Thus, we conclude that any issues arising from the trial court's dismissal of counts I, II, V, and VII of the Amended Complaint were not properly preserved for appellate review and will not be considered.

¶ 25    For similar reasons, we must also find that Mentgen's contention that the trial court erred in denying her motion to reconsider is not preserved for appellate review.  By filing the Second

Amended Complaint, Mentgen abandoned the motion to reconsider the abandoned counts of the amended complaint.

¶ 26     Mentgen next contends that the trial court erred in dismissing Count VIII of the Second Amended Complaint alleging unjust enrichment against the Dowells.  The Dowells' brought combined motions to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure and to strike pursuant to section 2-615 of the Code (735 ILCS 5/2-619(a)(9), -615 (West 2018).  We review *de novo* a trial court's ruling under either section.  See *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10.

¶ 27     To state a claim for unjust enrichment, a plaintiff must allege that: (1) the defendant has unjustly retained a benefit to the plaintiff's detriment; and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.  *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25.  A claim of unjust enrichment does not require fault or illegality on the defendant's part; the essence of the cause of action is that one party is enriched, and it would be unjust for that party to retain the enrichment.  *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864 (1998).  The principle of unjust enrichment has no application where a specific contract governs the relationship of the parties; it only applies in the context of an implied contract. *Id*.  However, "unjust enrichment may be predicated on either quasi-contract or tort."  *Id*..  Where an unjust enrichment claim is based on tort, instead of quasi-contract, the existence of a specific contract does not defeat a plaintiff's cause of action.  *Id*.  See also *Pedinghaus v. Pedinghaus*, 295 Ill. App. 3d 943, 949 (1998) ("In the present case, plaintiff bases his unjust enrichment claim on a tort theory, specifically, that defendants, through their agent Carl, fraudulently induced him to sell his shares in the CUP trust.  Since plaintiff's unjust enrichment claim is based on tort, instead of quasi-contract, the existence of a specific contract does not defeat his cause of action.")

¶ 28    Here, Mentgen alleged that the Dowells were able to purchase the subject property for half of its value considering the uses that were allowed under the Amended Management Plan that had been negotiated and verbally approved without her knowledge before the closing of the sale. The Dowells knew that Mentgen was unaware of the approved Amended Plan and knew that Mentgen would not have agreed to the $470,000 purchase price had she been aware of it. The Dowells also knew that the agreed upon price of $470,000 did not reflect the true value of the property with the Amended Plan verbally approved before closing. The Dowells purposely concealed the existence of the Amended Plan so that they could purchase the property for approximately half of its value, given the terms of the Plan. Thus, the Dowells benefitted from the verbal approval of the Amended Plan prior to closing because the Plan greatly increased the value of the property, and they did not have to pay for the increased value. According to Mentgen, this violated the fundamental principles of equity, justice, and good conscience.

¶ 29    In granting the motion to dismiss the unjust enrichment count, the trial court stated in part:

"I agree that they [Dowells] got a benefit. They got a benefit through negotiations with TLC, and whether or not you were aware of it isn't terribly important. I'm just failing to see how their actions created a wrongful act, or are defined—came to be defined as a wrongful act."

¶ 30    As we have already noted, a claim of unjust enrichment does not require fault or illegality on the defendant's part. See *Stathis*, 295 Ill. App. 3d at 864. The essence of the cause of action is that one party is enriched, and it would be unjust for that party to retain the enrichment. Thus, to the extent that the trial court relied on this reasoning as a basis for dismissal, its reliance was in error.

¶ 31    The trial court also stated:

"I—For purposes of this motion, I accept that representation that they did that, but it still doesn't establish for me that the Dowells owed some—or Book owed some sort of a duty to the Plaintiff and [T]rust to disclose these discussions.

Their—As I said before, their relationship was controlled by the written contract for the purchase of the sale which was supervised by the Court.

So, I'm going to grant the motion. I don't believe—I'm going to dismiss Dowell and Book [*sic*] with prejudice. I don't believe that there is a cause of action because I—there is no duty for them to disclose their discussions regarding what they can do with this property. So, they're dismissed with prejudice\*\*\*."

¶ 32    The Dowells argue, as the court mentioned, that they and Mentgen were parties to the real estate contract; therefore, unjust enrichment has no application. See *Stathis*, 295 Ill. App. 3d at 864. Mentgen replies that the claim of unjust enrichment is based not on the real estate contract but on the amended management plan between the Dowells and TLC; thus, "there is not a specific contract between the TRUST and the DOWELLS that governs the relationship of the DOWELLS and TLC."

¶ 33    Mentgen's argument misses the point. Unjust enrichment has no application where a specific contract governs the relationship of the *parties*, *i.e.* the plaintiff and the defendant, not the defendant and another actor. See *Stathis*, 295 Ill. App. 3d at 864. However, Mentgen based her claim of unjust enrichment on the tort of fraudulent concealment, alleging that the Dowells "purposely concealed the existence of the verbally approved Amended Management Plan from SUSAN BEESON MENTGEN so it could purchase the subject property for approximately half its value." Because this claim was based on tort, the existence of the real estate contract does not defeat Mentgen's cause of action. See . *Pedinghaus*, 295 Ill. App. 3d at 949.

¶ 34    The required allegations for a claim of unjust enrichment are few.  Mentgen clearly alleged that the Dowells obtained the benefit of a substantially lower price for the property than would have been expected by fraudulently concealing the amendment of the management plan and that the Dowells' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.  We conclude that the trial court erred in dismissing this count.

¶ 35    Mentgen next contends that the trial court erred in dismissing Count III of the Second Amended Complaint that alleged breach of fiduciary duty against Betlinski and Berkshire.  To state a claim for breach of fiduciary duty, a plaintiff must allege that: (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the party complains.  *Lawlor v. North America Corp. of Illinois*, 2012 IL 112530, ¶ 69.  Our review of the trial court's dismissal is *de novo*.

¶ 36    Mentgen alleged that Bettlinski learned prior to the signing of the real estate contract that the Dowells had obtained verbal approval of the Amended Management Plan and knew that the uses allowed under that plan were prohibited by the Easement  However, Bettlinski also knew that Mentgen did not know about the amended plan, and she failed to inform Mentgen and the Trust about that "material fact" relating to the transaction and affecting the value of the property.  Because of this breach, Mentgen was "induced into accepting a purchase price that was well below the value of the Subject Property without the prohibitions of the Conservation Easement."

¶ 37    There is no doubt that a fiduciary relationship existed between Betlinski/Berkshire and Mentgen, as trustee.  A real estate broker has long served as an agent of the owner of property, bargaining and negotiating on behalf of her principal in relation to the purchase or sale of property.  See *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1063 (1996).  Pursuant to the Real Estate License Act of 2000 (Act), licensees under the Act "shall be considered to be

- 13 -

representing the consumer they are working with as a designated agent for the consumer unless there is a written agreement between the sponsoring broker and the consumer providing that there is a different relationship." 225 ILCS 454/15-10 (West 2020).

¶ 38    However, the Act provides for the concept of dual agency in the same transaction, a situation that occurred in this case, as Bettlinski/Berkshire represented both Mentgen and the Dowells. See 225 ILCS 454/15-45 (West 2020). There is no contention here that Mentgen did not know the implications of a dual agency or that the dual agency agreement, which Mentgen signed, did not contain the statutorily required information about dual agency. See 225 ILCS 454/15-45 (West 2020). In general, a dual agent is not to disclose recommended or potential acceptable prices or terms to either the buyer or seller. See 225 ILCS 454/15-45 (West 2020). Specifically listed as an item of information that an agent cannot disclose in a dual agency situation is "Confidential information that Licensee may know about a client, without that client's permission." 225 ILCS 454/15-45 (West 2020). "Confidential information" is defined as:

> "[I]nformation obtained by a licensee from a client during the term of a brokerage agreement that (i)*** (ii) deals with the negotiating position of the client, or (iii) is information the disclosure of which could materially harm the negotiating position of the client unless at any time:
>
> ***
>
> (3) the information becomes public from a source other than the licensee." 225 ILCS 454/1-10.

¶ 39    Here, Mentgen alleged that the "verbally approved Amended Management Plan was a material fact relating to the transaction and *affecting the value of the Subject Property*." (Emphasis added.) This type of information appears to be the type of confidential information regarding the

negotiating position of the Dowells that Betlinski/Berkshire was prohibited from disclosing. However, Mentgen also alleged that Betlinski was told by the Dowells, *Book, and/or Haderlein* of the approval of the Amended Plan and the planned uses of the land. Thus, Mentgen alleged that the Amended Plan and the Dowells' future plans were "public from a source other than the licensee" and no longer confidential. Disclosure of that information would no longer violate Betlinski's fiduciary duty to the Dowells, but failure to disclose it to Mentgen did violate her fiduciary duty to Mentgen. However, this is a clear example of the potential pitfalls of a dual agency transaction.

¶ 40    Regarding the third requirement that the breach proximately caused the injury of which the plaintiff complains, Mentgen alleged that she and the Dowells entered into the sales contract on February 2, 2017, and the court approved the sale on February 28, 2017. On February 16, Haderlein had attempted to e-mail Mentgen about the "tentative plan" to clear the nursery stock and plant corn and then do a crop rotation, but the e-mail had been sent to an old address. It was not until March 3 that Haderlein e-mailed the information to Mentgen's brother Joe Beeson and mailed the information to Mentgen. Mentgen sent an e-mail to Haderlein objecting to the "tentative plan" on March 18. The sale of the property was closed on April 5, 2017. Prior to the closing, Mentgen did not know that an Amended Management Plan had been approved, so she never thought to ask for a copy of any Amended Plan prior to the closing. Because of this breach of fiduciary duty, Mentgen was induced into accepting a purchase price that was well below the value of the property without the prohibitions of the Conservation Easement.

¶ 41    Betlinski/Berkshire argue that Mentgen cannot prove that Betlinski's alleged failure to disclose the existence of the Amended plan caused any damages because Mentgen was aware of

the information through Haderlein. Further, while Mentgen objected to the plan, she went through with the sale anyway.

¶ 42   We disagree with this analysis. First, Mentgen alleged that she learned from Haderlein that there was a "tentative plan" to use the land in a way incompatible with the lease, not that an Amended Plan for such usage had already been approved. She also learned of this information *after* she agreed to the sales contract and the court approved the sale. Had she been told this information by Betlinski in a timely fashion, she never would have entered into the contract. It is absurd to argue that Mentgen should be precluded from recovery because she went through with the sale even though she objected to what she thought was a "tentative plan;" we need not require the breaching of a court-approved sales contract in order to claim that one was damaged by actions taken in secret before the contract was entered into. We conclude that Mentgen properly alleged the proximate cause of her injuries. Therefore, Mentgen pled a proper cause of action in breach of fiduciary duty against Betlinski and Berkshire. Therefore, the trial court erred in dismissing Count III of the Second Amended Complaint.

¶ 43   Mentgen next contends that the trial court erred in dismissing Count IV of the Second Amended Complaint alleging consumer fraud against Betlinski and Berkshire. Mentgen provides a four-sentence argument culminating in the conclusion that Count IV stated a cause of action because it alleged that Betlinski "used unfair or deceptive acts by failing to tell Mentgen about the Amended Management Plan." This contention is undeveloped and does not conform with the requirements of Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), and we will not consider it.

¶ 44   Mentgen next contends that the trial court erroneously dismissed Count VII of the Second Amended Complaint alleging aiding and abetting against Betlinski, Berkshire, Book, Haderlein, and TLC. To state a cause of action for aiding and abetting the commission of a tort, a plaintiff

must allege: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 28 (2003). Again, our review of the dismissal of a claim is *de novo*.

¶ 45    Here, the alleged wrongful acts that caused an injury were the Dowells' commission of fraudulent inducement in failing to inform Mentgen of Haderlein's approval of the amended Management Plan prior to the execution of the real estate contract and fraudulent concealment for failure to inform Mentgen of the Amended Management Plan during the pendency of the contract. Mentgen alleged that all of the defendants "knew about this" and helped to conceal the Dowells' acts "by not informing Mentgen about the Amended Management Plan." Mentgen makes no more argument beyond this assertion that everyone who allegedly knew about the alleged fraud should have told her about it. She cites no case law to support her position and never addresses the issue of whether silence or inaction constitute substantial assistance for purposes of aiding and abetting. We find this issue to be undeveloped and not in conformity with the requirements of Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), and we will not consider it.

¶ 46                                    III. CONCLUSION

¶ 47    For these reasons, the judgment of the Circuit Court of McHenry County is reversed as to counts III and VIII of the Second Amended Complaint, and the matter is remanded for further proceedings on those counts. The judgment is affirmed in all other respects.

¶ 48    Affirmed in part, reversed in part, and remanded for further proceedings.