2019 IL App (1st) 190159-U

FIRST DIVISION
December 9, 2019

No. 1-19-0159

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| BARBARA ANDERSEN f/k/a Barbara Gimbel, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 D 1514 |
| | ) | |
| RICK GIMBEL, | ) | The Honorable |
| | ) | Edward Arce, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Griffin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The judgment of the circuit court is affirmed in all respects.

¶ 2     Petitioner Barbara Andersen appeals from the circuit court's judgment modifying her and respondent Rick Gimbel's parenting time for their two minor children following a bench trial during postdissolution of marriage proceedings.[1] On appeal, Barbara identifies several issues for our review, including whether the circuit court (1) erred in modifying Barbara's parenting time;

---

[1]At the time of the circuit court's judgment, the parties' son, who was born in August 2001, was 17 years old. He has now turned 18 years old. Barbara's appellate brief acknowledges that the circuit court's judgment relative to her parenting time for her son is now moot.

(2) abused its discretion on a number of discovery issues; (3) properly denied her request for child support and maintenance; (4) erred by ordering her to pay fees relative to a child evaluation; (5) erred by ordering that she transfer Bright Start 529 education savings accounts (Bright Start accounts)[2] to Rick; (6) "properly rejected ethical and due process arguments;" and (7) properly allowed Rick's counsel, Arthur Newman, to tender the child evaluator's report to the Illinois Attorney Registration and Disciplinary Commission (ARDC) in response to Barbara's disciplinary complaint against Newman.

¶ 3    Barbara's appellate brief contains serious deficiencies that result in the forfeiture of all of her arguments on appeal. For the reasons that follow, we affirm the circuit court's judgment in all respects.

¶ 4                              I. BACKGROUND

¶ 5    At the outset, we observe that the statement of facts in Barbara's appellate brief violates Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018), as it does not set forth "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Her statement of facts is biased in her favor and omits virtually all the evidence that was before the circuit court that is unfavorable her, which does not accurately describe the proceedings below. We therefore disregard Barbara's statement of facts and set forth the following facts that are supported by the record on appeal.[3]

---

[2]According to the Securities and Exchange Commission, "A 529 plan is a tax-advantaged savings plan designed to encourage saving for future education costs. 529 plans, legally known as 'qualified tuition plans,' are sponsored by states, state agencies, or educational institutions and are authorized by Section 529 of the Internal Revenue Code." SEC, *An Introduction to 529 Plans*, https://www.sec.gov/reportspubs/ investor-publications/investorpubsintro529htm.html (last visited Nov. 21, 2019).

[3]We also observe that Barbara's statement of facts includes numerous footnotes in which she purports to make "offers of proof." There is nothing in the record to suggest that these "offers of proof" were made in the circuit court. We therefore disregard any and all "offers of proof" in Barbara's appellate brief.

¶ 6     Barbara and Rick were married in 1995. Barbara is a licensed attorney[4] and Rick is an emergency room physician. Their marriage produced two children: a son, born in August 2001, and a daughter, born in January 2004. Barbara filed a petition for dissolution of marriage in February 2009. A judgment for dissolution of marriage was entered in May 2009, which incorporated the parties' marital settlement agreement (MSA) and a parenting agreement. Under the MSA, each party waived their right to maintenance from one another. The parties agreed that the amounts contained in the Bright Start accounts "shall be considered as the joint and equal contributions by Barbara and Rick despite the fact that Barbara is listed as the 'account owner' of these accounts." Under the parenting agreement, the parties agreed to have joint care, custody, and control of their children. They agreed to have equal rights and responsibilities regarding rearing and overall well-being of their children, as well as decision-making over their children's education, healthcare, religious training, extracurricular activities, and other matters. An agreed parenting schedule was attached to the parenting agreement. The parties agreed to rotate custody of the children every four days to accommodate Rick's work schedule. Sometime in late 2010, Rick remarried.

¶ 7     In September 2011, Barbara filed a motion for child support, asserting that her financial situation had changed. In November 2011, Rick, through counsel, filed a petition seeking sole custody of the children. The petition made numerous allegations, including that Barbara (1) repeatedly refused to communicate with him regarding the children and scheduling issues; (2) was hostile toward him when she did communicate; (3) repeatedly failed to take the children to scheduled activities that occurred during her parenting time and had never attended any doctor or dentist visits for the children; (4) refused to pay her share of the children's expenses; and

---

[4]Barbara has represented herself through all the dissolution and postdissolution proceedings.

(5) made disparaging remarks about him to the children. The circuit court, on its own motion, appointed a child representative for the parties' children. Rick ultimately withdrew the petition for sole custody and Barbara withdrew her motion for child support. The circuit court entered an agreed order that the parties would seek counseling to privately resolve future coparenting disputes. The child representative was discharged, and the matter was removed from the circuit court's status call.

¶ 8      In August 2015, Barbara filed a motion to clarify the parties' parenting agreement concerning communication with the children. Barbara asserted that she "does not accept e-mails/cell phones [*sic*] from [Rick] due to his continued harassment pursuant to same. (All communications are to be via U.S. Mail. [Barbara] has filed police reports against [Rick].)" Barbara asserted that Rick, who had purchased cell phones for the children, had taken the children on vacation and "directed the children to leave their cell phones at home," depriving Barbara from speaking to her children "for the last several weeks." Rick, acting *pro se*, responded to the motion and acknowledged that he purchased cell phones for the children in order to communicate with them while they were in Barbara's custody, as Barbara had cancelled her home phone service and had blocked his number on her cell phone. He asserted that Barbara had destroyed one child's cell phone and threatened to do the same to the other child's phone. He asserted that Barbara had called his employer to allege that Rick was harassing her. He admitted taking the children on vacation for 12 days and directing the children to leave their cell phones at home but denied that Barbara had not been able to communicate with the children during that time. Attached to his response was a police report documenting an incident in May 2014 in which Barbara told police that she had smashed one of the children's phones and threw it in the trash. Also attached to Rick's response

were e-mails between him and Barbara regarding the vacation, and e-mails sent during the vacation from the parties' daughter to Barbara.

¶ 9    Also in August 2015, Barbara filed a motion asserting that Rick had engaged in "harassing and manipulative conduct" by e-mailing her about the children and seeking payments from her for the children's activities. She requested that the circuit court order Rick "communicate all matters relative to the judgment and/or joint parenting agreement to [Barbara] via U.S. Mail only" and order Rick to stop sending her e-mails.

¶ 10    On September 10, 2015, Barbara was arrested and subsequently indicted on two counts of stalking and one count of harassment by telephone, where Rick was the alleged victim. The criminal court judge ordered that Rick have temporary sole custody of the children and that the temporary custody order could be modified by either the criminal court or the domestic relations court. The State's attorney eventually dropped two of the charges against Barbara and the matter proceeded to a bench trial, resulting in a verdict of not guilty. The parties have not directed our attention to the portions of the record that contain much detail about the criminal proceeding.

¶ 11    In September and October 2015, the parties filed numerous petitions seeking various relief.[5] After a hearing at which both Barbara and Rick testified, the circuit court entered orders restoring the four-day custody rotation schedule, denying Rick's request for supervised visitations between Barbara and the children, and prohibiting both parties from speaking "in a demeaning or derogatory matter about the other to or in the presence of the minor children." The circuit court entered an order of protection in favor of Rick that required Barbara to stay away from him, refrain from contacting him by any means, and have no contact with Rick's employer, family members,

---

[5]Barbara continued to represent herself, while Rick obtained new counsel.

his wife's family, or the babysitter hired by Rick for the children. Barbara was also prohibited from removing the children from Illinois or concealing them within Illinois.

¶ 12    In January 2016, Barbara filed a verified petition seeking sole custody of the parties' son. The petition made numerous allegations against Rick and asserted that their son wanted to live solely with Barbara. Their son's name and signature appeared on the verification page of the petition. Rick responded by filing an emergency petition to terminate Barbara's parenting time or, in the alternative, have Barbara's parenting time be supervised, alleging that Barbara's petition contained several derogatory statements against Rick, and that Barbara violated the parties' mutual obligation to avoid speaking about the other in a demeaning or derogatory manner to the children by having their son verify Barbara's petition. Following a hearing, the circuit court found that Barbara's conduct in having the parties' minor son verify Barbara's pleading constituted a "serious endangerment of the minor child[.]" The circuit court suspended Barbara's parenting time until further order of court, and stated that it would consider a report from the court-appointed child representative at the next hearing to determine whether to modify the suspension order. The circuit court eventually modified its order to allow Barbara supervised visitation with the children. In April 2016, the circuit court permitted Barbara to have unsupervised visitation with the children for 3 ½ hours one night per week and for 24 hours each weekend.

¶ 13    The parties filed numerous petitions regarding their custody rights, with Rick seeking sole custody and Barbara seeking to restore custody and visitation to the four-day custody rotation. The circuit court appointed an evaluator, Phyllis Amabile, M.D., a board certified psychiatrist and licensed physician,[6] for the children under section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/604.10 (West 2016)). After reviewing

---

[6]Dr. Amabile is also a licensed attorney, although her license to practice law is voluntarily inactive.

voluminous documents and conducting interviews of the parties and their children, Dr. Amabile issued her report on July 20, 2017. The circuit court ordered that Dr. Amabile's report "shall not be disclosed to any third party without leave of court." In September 2017, Barbara was granted leave to retain her own child evaluator, but subsequently indicated that she would not be calling her retained child evaluator to testify at trial. In March 2018, the circuit court granted Rick's motion to release Dr. Amabile's report for the limited purpose of disclosing the report to the ARDC as part of a disciplinary complaint filed by Barbara against Rick's attorney, Arthur Newman.

¶ 14    The circuit court held a trial on the parties' competing petitions over the course of several days. The circuit court heard testimony from the parties, Dr. Amabile, and other witnesses, and admitted dozens of exhibits from both parties into evidence, including Dr. Amabile's 58-page report.[7] During trial, the parties stipulated that Rick "shall hereafter have the sole decision-making responsibility in connection with decisions made as to [the children] as to [*sic*] those relating to (1) education, including school and tutors; (2) health, including medical, dental[,] and psychological needs; (3) religion; and (4) extracurricular activities." The stipulation provided that it should "not be construed as an admission and/or declaration against interest by Barbara[.]"

¶ 15    On September 24, 2018, the circuit court entered a written parental allocation judgment. The circuit court gave significant weight to Dr. Amabile's findings and recommendations, finding her report to "be substantive, detailed[,] and instructive as to the dynamics in this family." The circuit court observed that "[t]here is no evidence in the record to support [Barbara's] statement in her [r]esponse to [Rick's] [c]losing [a]rgument that 'she (Amabile) is out of touch with reality' and 'she writes lengthy, ill-researched, biased[,] and misquoted reports.' "

---

[7]Dr. Amabile's report was filed in this court under seal. We observe that pages 33-37 of the report have not been included in the record on appeal, which appear to be portions of the report detailing Dr. Amabile's interviews with the children. Neither party acknowledges this omission, and there is no explanation as to why those pages have not been included.

¶ 16    The circuit court then discussed the applicable factors in section 602.7(b) of the Marriage Act (750 ILCS 5/602.7(b) (West 2016)) to determine an allocation of parenting time and made the following findings: As to the first factor—the wishes of the parents (*id.* § 5/602.7(b)(1))—Rick wanted greater parenting time, while Barbara wanted to return to the four-day rotation schedule. As for the wishes of the children (*id.* § 5/602.7(b)(2)), both children "expressed a preference to return to the four-day on, four-day off schedule. The children clearly enjoy their time with both parents and wish that to continue." In the 24 months preceding the parties' modification petitions (*id.* § 5/602.7(b)(3)), the parties shared caretaking functions, while Rick was more engaged in disciplining the children and was solely responsible for making medical decisions. As for the interaction and interrelationship of the children with their parents (*id.* § 5/602.7(b)(5)), Barbara had endangered the parties' son by having him sign her petition for sole custody (see *supra* ¶ 12), which "showed extremely poor judgment and an insensitivity to the effect it would have on [him]." Regardless, "there is no question that the children love their mother and enjoy their time with her," which was established through Barbara's testimony and Dr. Amabile's report. Any adjustment the children's home, school, and community (*id.* § 5/602.7(b)(6)) would be minimal.

¶ 17    The circuit court found that section 602.7(b)(7), which concerns "the mental and physical health of all individuals involved" (*id.* § 5/602.7(b)(7)) was "a substantial factor in this case." The circuit court observed that both children "were deeply disturbed by the circumstances regarding this litigation and the relationship between their parents." The mental health of the children had "improved substantially" through "the efforts of court appointed therapists." Dr. Amabile recommended continued therapy and Rick was "more supportive of continued therapy and is more likely to insure [*sic*] that therapy takes place." As for the parents, the circuit court found "Dr. Amabile's uncontroverted testimony is that [Barbara] suffers from a mental health disorder or

disorders." The circuit court quoted Dr. Amabile's report, in which she wrote that "[m]ost of the difficulties this family has experienced during the past seven or eight years are a consequence of significant, untreated mental illness in [Barbara]. Her episodic symptoms have caused all four of them instability, emotional upheaval, and consequences from her poor judgment and poor impulse control." The circuit court observed that while Barbara disputed Dr. Amabile's finding, "there is no evidence in the record to the contrary concerning [Barbara's] mental health."

¶ 18     Next, the circuit court considered "the willingness and ability of each parent to place the needs of the child ahead of his or her own needs." *Id.* § 5/602.7(b)(12). The circuit court observed that that a four-day rotating custody schedule required a substantial level of cooperation and communication, and that the evidence showed Rick had "attempted to communicate with [Barbara] concerning the needs of the children and [Barbara] has rebuffed those efforts." The circuit court observed that Barbara testified "that she believes no communication is necessary in a four-day rotating schedule." The circuit court found that "the children's best interests are not served by a four-day rotating schedule between parents who do not communicate." As for the willingness and ability of each parent to encourage a close and continuing relationship between the other parent and the child (*id.* § 5/602.7(b)(13)), "the ferocity of [Barbara's] communications to [Rick], [the] children[,] and third parties clearly establishes that [Rick] is more capable of encouraging a close and continuing relationship between the children and [Barbara]. [Barbara] considers any form of communication between [Rick] and the children during her parenting time to be harassment."

¶ 19     The circuit court stated that it had considered all of the factors in section 602.7 of the Marriage Act "and finds that the children's best interest would be served by modifying the parenting time provisions of the Joint Parenting Agreement and awarding [Rick] the majority of the parenting time." The circuit court modified the parties' parenting time to give Rick "sole legal

custody, control[,] and education of the minor children." Barbara was given parenting time every other weekend, starting after school on Friday through 9:00 p.m. Sunday, and every Wednesday after school until 9:00 p.m. The circuit court also allocated the parties' parenting time for school breaks, vacation time, holidays, the parties' birthdays, and imposed various restrictions on the parties regarding their conduct in front of, and concerning, the children. The circuit court also ordered Rick to pay $12,240 and Barbara to pay $10,494 "as and for [the] [c]hild [r]epresentative attorney's fees."

¶ 20    Rick filed two postjudgment motions to modify the September 24, 2018, judgment. First, he argued that the circuit court did not address the parties' allocation of fees for Dr. Amabile's trial testimony, and he sought to modify the judgment to reflect that Barbara was required to reimburse him for the $4000 he previously paid to Dr. Amabile for her presence at trial. Second, he sought an order modifying certain aspects of the parties' allocation of parenting time, and to account for the fact that Barbara was moving residences, which would affect details of how the parties obtained custody of the children.

¶ 21    On December 20, 2018, the circuit court addressed the postjudgment motions, as well as other matters that had not yet been addressed. First, the circuit court ordered that the parties would each pay Dr. Amabile $2500 for her trial testimony, and ordered Barbara to reimburse Rick $1500, as he had already paid Dr. Amabile $4000. Second, the circuit court modified the details of the parties' custody to account for the location of Barbara's new residence. Third, the circuit court addressed an unadjudicated petition to modify the parties' MSA. Rick sought an order directing either the child representative or "or any other responsible party, including himself" to hold the Bright Start accounts for the benefit of the children. The circuit court found that "the children's Bright Start accounts which were established prior to the marriage to be a resource of the children,

not of either party." The circuit court ordered that Rick would hold the accounts for the benefit of the children. Finally, the circuit court granted Rick's pending motion to dismiss Barbara's pending request for maintenance, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). The circuit court found that under the judgment for dissolution of marriage, Barbara had "permanently waived and released her rights to maintenance[,]" and thus dismissed her request with prejudice.

¶ 22    Barbara filed a timely notice of appeal on January 22, 2019, from the September 24, 2018, and December 20, 2018, judgment orders.[8]

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, Barbara identifies a host of issues for our review. We find that all of her arguments are forfeited. The argument section of Barbara's appellate brief is difficult to follow, does not clearly define the issues she is raising, and is devoid of any argument supported by citations to authority and the record on appeal, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) (requiring that an appellant's brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."). Points raised in an appellate brief that are not supported by citations to relevant authority do not comply with Rule 341(h)(7) and are forfeited. Ill. S. Ct. R. 341(h)(7) ("Points not argued are forfeited[.]"); *People v. Ward*, 215 Ill. 2d 317, 332 (2005). "A reviewing court is entitled to have issues clearly defined with relevant authority cited." *In re Marriage of Bates*, 212 Ill. 2d 489, 517 (2004). "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal

[8]Barbara's notice of appeal was timely because the 30th day after December 20, 2018, was January 19, 2019, which was a Saturday. The courts were closed the following Monday, January 21, 2019, in observance of Martin Luther King, Jr. Day.

and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 25   Here, Barbara's near complete failure to develop and advance any cohesive or coherent legal argument supported by citations to the record and to relevant authority results in forfeiture of all her appellate arguments. The only authority she cites in her brief pertain to the standards of review for—and for general principles of law regarding—due process, statutory construction, modification of child custody orders, amendments to pleadings, and the attorney-client privilege, but she does not tailor any of those authorities to fit her arguments in any manner. We briefly describe the issues raised in the argument section of Barbara's appellate brief.

¶ 26   Barbara devotes a portion of her argument section to attacking Dr. Amabile's evaluation of Barbara and the thoroughness of Dr. Amabile's evaluation in general, but does not offer any specific legal argument as to how her contentions are relevant to our review of the circuit court's judgment. We have no basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 27   She includes a section titled "The Lack of Proof Relative to the January 2016 Petition" that consists primarily of a series questions and haphazard statements that do not engage any of the circuit court's findings on any issue relevant to its modification of the parties' parenting time. It is entirely unclear what legal arguments Barbara is attempting to advance and, therefore, we have no basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 28   Barbara then turns to a theme that is well-documented in the record on appeal: her belief that Rick and his counsel used Rick's connections with Glenview police officers to engage in a pattern of harassment, culminating in "frivolous" criminal charges against her as part of ploy to question her mental health and to eliminate her child custody rights. Barbara frequently accused

Rick of using his position as an emergency room physician to foster relationships with Glenview police officers and accused him of using those connections to harass her by having the police sent to her home on numerous occasions. In her appellate brief, she accuses Rick and his counsel of using both the criminal charges and the no contact order provision of her conditions of bail in the criminal court to demonstrate in these postdissolution proceedings that she refused to communicate with Rick regarding custody matters. She fails to substantiate any of her allegations with citations to the record, and ultimately fails to offer any legal argument directed at the circuit court's judgment at issue in this appeal. We have no appropriate basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 29     Barbara argues that there was no evidence presented about her mental health prior to her arrest and asserts that the circuit court erred by "refus[ing] to limit the hearing to prepetition allegations." Barbara, however, does not identify what petition she is referring to. She argues that Rick and his counsel "were trying to manipulate" the children's therapists "to advocate to [Dr.] Amabile that [Rick] be granted greater custody rights." She asserts that Rick had communications with the children's therapists, and that the child representative encouraged the therapists to communicate with Dr. Amabile. Her line of argument is confusing and disjointed, and she ultimately fails to advance a legal argument directed at any specific ruling or judgment by the circuit court. We have no basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 30     Next, she contends that "it was error for her to lose parenting time with her daughter on the basis of the affidavit she had her son sign." In doing so, she blames Rick for "put[ting] [her] in the position to have the need for such an affidavit." She asserts that there was no other evidence of any endangerment to the children. While this borders on a legal argument—presumably directed

at the circuit court's finding with respect to section 602.7(b)(5) that she endangered her son (*supra* ¶ 16)—she makes no express argument that the finding was against the manifest weight of the evidence. She makes no argument that her conduct was appropriate and identifies no evidence in the record tending show that her decision to have her minor son verify a pleading, without an attorney or any form of adequate representation, did not constitute a form of endangerment. We also note that as to the section 602.7(b)(5) factor, the circuit court observed that "there is no question that the children love their mother and enjoy their time with her." *Supra* ¶ 16. We have no basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 31    Barbara "asks this [c]ourt to examine the rulings surrounding" Rick's and Newman's attorney-client privilege. She asks us to find that the circuit court "erred in barring [Barbara] from asking for communications and testimony as to Newman's role/'advice' to [Rick] relative to the criminal case, including but not limited to the charges and the effort to revoke [her] bond." Her theory, apparently, is that Newman was giving Rick legal advice to harass Barbara by filing criminal charges against her. She invites us to "contemplate" the circuit court's "involvement in the ARDC matter," and asserts that the circuit court erred by allowing "a layperson custody evaluator's report[9] to be tendered to the ARDC so as to distract them from seriously investigating [Barbara's] [Illinois Rule of Professional Conduct] 8.4(g) complaint." Once again, Barbara fails to provide any citations to the record on appeal as what circuit court rulings on attorney-client privilege matters she is complaining of, and she fails to cite any authority to support her contentions. She fails to explain how the circuit court's decision to release Dr. Amabile's report for the purpose of providing it to the ARDC was an abuse of the circuit court's discretion. We have

---

[9]Barbara is apparently referring to Dr. Amabile's report.

no basis from which to conclude that Barbara is entitled to any appellate relief on any of these issues.

¶ 32    Next, Barbara identifies three circuit court rulings on financial matters that she believes are erroneous. First, she contends that the circuit court erred by ordering her to turn over the Bright Start savings accounts to Rick. She asserts that she "owns and had solely personally funded" those accounts. Second, she argues that the circuit court erred by ordering her to pay $11,494 for Dr. Amabile's fees, which she contends was inappropriately sought by the child representative and was excessive. Third, she contends that she should not have to pay any portion of Dr. Amabile's fee for testifying at trial. None of these arguments are developed or supported by citations to the record or to any authority. We have no basis from which to conclude that Barbara is entitled to any appellate relief on any of these issues.

¶ 33    Finally, Barbara asserts that the circuit court erred in denying with prejudice her request for maintenance from Rick. She asserts that "[h]ere, [Rick]/Newman take the position that [Barbara] has been mentally unwell since the time of the divorce. If this [c]ourt decides to accept that story, does that not mean that [Barbara's] waivers of child support and maintenance are void for want of mental capacity?" She neither develops nor advances any legal argument on this issue. We have no basis from which to conclude that Barbara is entitled to any appellate relief on this issue.

¶ 34                                III. CONCLUSION

¶ 35    We are fully cognizant of the sensitive nature and deep personal and societal importance of parenting time, as well as the careful procedures crafted by our legislature that must be followed before modifying parenting time against the wishes of one parent. Here, the circuit court's modification of the parties' rights following a trial was the result of a reasoned decision applying

15

section 602.7 of the Marriage Act to the facts before it. Barbara has not adequately identified or directed our attention to any legal deficiencies in the circuit court's modification orders, and nothing on the face of either the orders or the record on appeal strikes us as outside the bounds of reason or the law. The condition of Barbara's appellate brief leaves us with no choice but to find her arguments forfeited and to affirm the judgment of the circuit court.

¶ 36    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37    Affirmed.