2020 IL App (1st) 200612-U

FIRST DIVISION
November 30, 2020

No. 1-20-0612

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| BARBARA ANDERSEN f/k/a Barbara Gimbel, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 D 1514 |
| | ) | |
| RICK GIMBEL, | ) | The Honorable |
| | ) | Matthew Link, |
| Respondent-Appellee. | ) | Judge Presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the circuit court is affirmed. The circuit court did not err by denying petitioner's motion to dismiss respondent's petition for a rule to show cause. Absent a transcript or other report of proceedings, we cannot say that the circuit court exhibited any bias toward petitioner, abused its discretion by denying a continuance, or abused its discretion by finding petitioner in indirect civil contempt.

¶ 2    Petitioner, Barbara Andersen, an attorney representing herself, appeals from the circuit court's order finding her in indirect civil contempt. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     This is Barbara's third appeal in these postdissolution of marriage proceedings. In *Andersen v. Gimbel*, 2019 IL App (1st) 190159-U (*Andersen I*), Barbara appealed numerous portions of the circuit court's judgment following a bench trial. In relevant part, the circuit court ordered Barbara to transfer Bright Start 529 education savings accounts (Bright Start accounts) to respondent Rick Gimbel, and to reimburse Rick $1500 for fees he paid for the trial testimony of Phyllis Amabile, M.D., the court-appointed child evaluator. *Id.* ¶ 21. We affirmed the circuit court's judgment in all respects after finding that Barbara forfeited all her appellate arguments. *Id.* ¶ 35.

¶ 5     While *Andersen I* was pending in this court, Rick pursued petitions for rules to show cause against Barbara for failing to (1) reimburse him for Dr. Amabile's fee, (2) transfer the Bright Start accounts to Rick, and (3) provide information to Rick about the Bright Start accounts balances. The circuit court found Barbara in indirect civil contempt for failing to reimburse Rick for Dr. Amabile's fee and ordered Barbara to pay Rick $1500 to purge the contempt. The circuit court separately found Barbara in direct civil contempt for refusing to transfer the Bright Start accounts to Rick, but the circuit court did not enter any sanction and eventually stayed the direct civil contempt proceedings due to the pendency of *Andersen I*. The circuit court held Barbara in indirect civil contempt for failing to provide any information to Rick about the Bright Start accounts balances, but Barbara subsequently purged herself of the indirect civil contempt finding by testifying in open court that the accounts had zero balances.

¶ 6     In *Andersen v. Gimbel*, 2020 IL App (1st) 191480-U (*Andersen II*), Barbara sought review of all three of the circuit court's contempt findings. We affirmed the circuit court's indirect civil contempt finding regarding Dr. Amabile's fee. *Id.* ¶ 25. We dismissed the remainder of Barbara's

appeal for lack of appellate jurisdiction because no sanction had been imposed on the direct civil contempt finding and Barbara's challenge to the indirect civil contempt finding was moot since she had purged herself of the contempt with respect to the Bright Start accounts' balances. *Id.* ¶ 25.

¶ 7 While *Andersen II* was pending in this court, Rick filed another petition for rule to show cause—which is the subject of this appeal—and made the following allegations. In February 2017, the circuit court ordered that costs for Dr. Amabile's services were to be paid by the parties by withdrawing money from the Bright Start accounts. Barbara and Rick were each to repay the withdrawn amounts through three annual payments. The circuit court's order was to "be secured as a lien on each party's residence to ensure payment." In July 2017, the circuit court entered an order stating that there was a balance of $5000 due under the February 2017 order. Over Barbara's objection, Barbara was ordered to withdraw an additional $11,200 from the Bright Start accounts to pay for Dr. Amabile's report. Rick alleged that Barbara had withdrawn over $80,000 from the Bright Start accounts without his consent in violation of the parties' judgment of dissolution of marriage, Barbara had not repaid $10,000 of what she owed under the February 2017 order, and Barbara's failure to comply was willful and contumacious. Rick requested that Barbara be held in indirect civil contempt and be ordered to restore over $120,000 to the Bright Start accounts. He also requested a lien on Barbara's condominium and attorney fees. At the presentation of Rick's petition, Barbara objected and requested leave to issue a subpoena to Bright Start, but the circuit court instructed Barbara to file a written response to Rick's petition. Barbara filed a motion to strike Rick's petition and requested a continuance of the contempt hearing to issue a subpoena to Bright Start. She further requested that the circuit court order mediation "to resolve the amounts due and owning relative to the pre-judgment (i.e. 2009) contribution amount and resolution of same."

¶ 8    On March 16, 2020, the circuit court held a hearing. No court reporter was present, and no transcript or bystander's report has been included in the record on appeal. The circuit court's order reflects that it found Barbara in indirect civil contempt for failing to comply with the judgment of dissolution of marriage's provision that the parties not make withdrawals from the Bright Start accounts without written consent. The circuit court ordered, "[a]s a partial purge Barbara Andersen shall pay $31,601 to a [Bright Start account] in the name of Rick Gimbel within 14 days of receiving the account information from Rick Gimbel." The circuit court also ordered Barbara to pay $2600 in attorney fees to Rick's counsel. Barbara was ordered to appear in court on May 15, 2020, with proof of all contributions to the Bright Start accounts between May 2009 and January 2017. Barbara filed a notice of appeal on April 13, 2020.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, Barbara identifies six issues for our review. The issues, as she presents them in her appellate brief, are:

> "(1) Whether the trial Court properly issued contempt findings relative to monies held by [Barbara's father,] non/third party Edward Andersen;
>
> (2) Whether the trial Court exhibited bias in conducting the contempt hearing on March 16, 2020;
>
> (3) Whether the trial Court exhibited bias relative to [Barbara's] Motion to Strike the Third Petition for Contempt;
>
> (4) Whether [Rick] waived the right to respond to [Barbara's] Motion to Strike the Third Petition for Contempt;
>
> (5) Whether the trial Court properly denied [Barbara's] Motion to Strike the Third Petition for Contempt; and

4

(6) Whether the trial Court erred in refusing to allow a continuance so that [Barbara] could subpoena the Bright Start records for purposes of conducting an accounting of monies owed by [Barbara] to [Rick]."

¶ 11   At the outset, we note—as we did above (*supra* ¶ 8)—that the record does not contain any report of proceedings for the circuit court's March 16, 2020, hearing. In her appellate brief, Andersen acknowledges the lack of any report of proceedings, but alleges that the circuit court "refused to wait for [Barbara] to bring in a court reporter." She proceeds to include in her statement of facts a "summary" of events on March 16, 2020.

¶ 12   Barbara's "summary" of events is not entitled to any credence as she has failed to comply with Illinois Supreme Court Rule 323 (eff. July 1, 2017) governing reports of proceedings. Rule 323(c) provides that if no verbatim transcript is available, "the appellant may prepare a proposed report of proceedings from the best available sources, including recollection." Ill. S. Ct. R. 323(c). The appellant must then serve the proposed report on all parties within 28 days of the filing of the notice of appeal. *Id.* Any other party may propose amendments or an alternative report of proceedings. *Id.* The appellant must then present the proposed report or reports to the circuit court "for settlement and approval." *Id.* Alternatively, the parties may, by written stipulation, "agree upon a statement of facts material to the controversy and file it without certification in lieu of and within the time for filing a report of proceedings. Ill. S. Ct. R. 323(d). Here, Barbara does not direct our attention to any efforts she made to develop a bystander's report, and none is included in the record on appeal. Furthermore, the record does not contain any written stipulation between the parties regarding the material facts from the March 16, 2020, hearing. Barbara's failure to comply with Rule 323 leads us to reject the "summary" events contained in her statement of facts, and to rely strictly on the record properly before us.

¶ 13    Barbara, a licensed attorney, has been repeatedly advised by this court that she must follow our supreme court's rules governing appeals. In *Andersen I*, we disregarded Barbara's entire statement of facts due to her violation of Supreme Court Rule 341(h)(6) (eff. May 25, 2018), (*Andersen I*, 2019 IL App (1st) 190159-U, ¶ 5), and we concluded that she forfeited all of her appellate arguments for failing to comply with Rule 341(h)(7) (*id.* ¶ 25). Likewise, in *Andersen II*, we found that Barbara forfeited her appellate argument by failing to provide citations to the record on appeal in the statement of facts and argument sections of her appellate brief, in violation of Rule 341(h)(6)-(7), and found that she failed to provide a transcript of a relevant hearing. *Andersen II*, 2020 IL App (1st) 191480-U, ¶ 19. And during briefing in *Andersen II*, Barbara was specifically advised to consult our supreme court's rules governing final judgments after she sought leave to amend her notice of appeal, and we subsequently struck an amended notice of appeal that was filed without leave of court. Barbara's obstinate disregard for our supreme court's rules governing civil appeals is cause for concern, and we advise Barbara to familiarize herself with those rules in any future appeals she pursues in our courts.

¶ 14    Barbara's first argument on appeal is almost entirely incomprehensible and devoid of any legal argument supported by relevant authority, in violation of Rule 341(h)(7). She argues that the circuit court erred by finding her in contempt "relative to the conduct of third/non-party Edward Andersen."[1] In the "summary" of events contained in Barbara's statement of facts, she asserts that the circuit court ordered Edward to pay $31,000 to Rick. That contention, however, is contradicted by the circuit court's actual order that states that "*Barbara* shall pay $31,601 to a [Bright Start account] in the name of Rick Gimbel ***." (Emphasis added.) Barbara argues that Edward agreed to voluntarily participate in mediation to address the Bright Start account funding, and then argues

---

[1]Edward Andersen is Barbara's father, but the record on appeal properly before us offers little insight into Edward's involvement in this case.

that there is no judgment against Edward. She argues that the circuit court "overreached its authority by threatening Andersen with contempt when she offered to voluntarily bring in a third party to facilitate in resolution." The circuit court's order, however, unequivocally reflects that Barbara was held in indirect civil contempt for violating previous court orders prohibiting withdrawals of funds from her children's Bright Start accounts. We cannot discern from the record before us that Barbara was held in contempt because she offered to have her father participate in mediation, or that her father's conduct was the focus of the contempt proceedings. As such, Barbara's argument is unavailing and does not provide an adequate basis for this court to determine that the circuit court erred in any manner.

¶ 15    Barbara's second argument is that the circuit court exhibited bias in conducting the March 16, 2020, hearing by "refusing to allow [her] court reporter to arrive." She asserts that she had flu-like symptoms on March 16, 2020, and that the circuit court should have ordered a continuance. She also contends that the circuit court "permitted" Rick's counsel to draft the March 16, 2020, orders "with no edit/input from [Barbara]." However, as we discussed above, if Barbara wanted to create a record of the events of March 16, 2020, she could have followed the procedures set forth in Rule 323. She did not. As the appellant, it was Barbara's burden to supply this court with a sufficiently complete record to support her claim of error. *Wells Fargo Bank, N.A. v. Hansen*, 2016 IL App (1st) 143720, ¶ 15 (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Absent an acceptable report of proceedings, we cannot discern what took place during the March 16, 2020, hearing. "Without this information, we must presume that the trial court did not act arbitrarily but within the bounds of reason, keeping in mind relevant legal principles." *Id.* (citing *Foutch*, 99 Ill. 2d at 391-92). We therefore cannot say that the trial court judge exhibited any bias toward Barbara.

¶ 16     Barbara's third argument suffers from the same defect as her second argument. She contends that the circuit court exhibited bias by denying her motion to strike Rick's petition without explanation and without ordering any briefing, and further exhibited bias by refusing to strike Rick's petition. She cites no legal authority to support her arguments, in violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018), and the record on appeal contains no support for her claims of bias. *Supra* ¶ 15. We therefore cannot say that the circuit court exhibited any bias toward Barbara, or that Barbara has presented an adequate basis for disturbing the circuit court's judgment.

¶ 17     Barbara next argues that Rick "waived" any objections to her motion to strike by failing to respond to it, and she contends that the Rick is barred by Rule 341(h)(7) from advancing any argument on appeal in opposition to her motion to strike. Relatedly, she argues that the circuit court erred by denying her motion to strike. Her motion to strike was a combined motion under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)) comprising motions under sections 2-615 and 2-619 of the Code (*id.* §§ 2-615, 2-619). In support of her section 2-615 motion, Barbara argued that Rick's petition failed to cite any statutory provisions or legal authority as a basis for contempt or the amount of money sought by the petition. She further asserted that the petition failed to set forth any basis for recovering postjudgment contributions she made to the Bright Start accounts. In support of her section 2-619 motion, she argued that Rick lacked standing to pursue any postjudgment contributions to the Bright Start accounts, as those contributions were her property that she could withdraw.

¶ 18     A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34. We accept as true all well-pleaded facts in the complaint. *Id.* "The critical inquiry is whether the allegations of the complaint, when

construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id.* A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint but interposes some affirmative matter that defeats or avoids the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Our review of a ruling on a motion to dismiss under either section 2-615 or 2-619 of the Code is *de novo*. *Bonhomme*, 2012 IL 112393, ¶ 34; *DeLuna*, 233 Ill. 2d at 59.

¶ 19    Here, Barbara's motion to strike was properly denied, as it missed the point of Rick's petition for a rule to show cause and did not set forth an adequate basis to strike or dismiss Rick's petition. Rick alleged that, according the judgment of dissolution of marriage, both parties had to agree in writing to all withdrawals from their children's education savings accounts, and that Barbara had withdrawn money without Rick's consent. Barbara disclosed in January 2017 that the Bright Start accounts had a combined balance of roughly $112,000, and subsequently testified in December 2019 that the accounts had zero balances. Barbara had previously been ordered to turn over control of the Bright Start accounts to Rick, an issue litigated in *Andersen I* in Rick's favor. Rick's petition alleged that while Barbara had been permitted to withdraw some money from the accounts pursuant to court orders, she had withdrawn over $80,000 without his written consent. It is clear from Rick's petition that he sought a finding of indirect civil contempt based on her noncompliance with the circuit court's previous orders, and he alleged specific facts in support of his petition. The circuit court correctly concluded that there was no basis for dismissing Rick's petition under section 2-615 because he alleged that Barbara was subject to the circuit court's previous orders and had not complied. Whether Rick would be entitled to recover postdissolution contributions from Barbara has no bearing on whether Barbara complied with the circuit court's previous orders. Furthermore, Barbara's argument in her section 2-619 motion that Rick lacked

standing to pursue postdissolution contributions is equally meritless in the context of these proceedings, as Rick alleged that Barbara could only make withdrawals from the Bright Start accounts with his written consent, which she did not obtain. Rick certainly has standing to seek enforcement of the circuit court's orders in this case, and therefore Barbara's section 2-619 motion was properly denied.

¶ 20    Finally, Barbara argues that the circuit court should have granted her an extension of time to issue a subpoena for the Bright Start accounts to conduct an accounting. Again, we have no report of proceedings for the March 16, 2020, hearing, and therefore cannot discern what arguments or evidence the circuit court heard regarding Barbara's request for a continuance. We again "presume that the trial court did not act arbitrarily but within the bounds of reason, keeping in mind relevant legal principles." *Hansen*, 2016 IL App (1st) 143720, ¶ 15 (citing *Foutch*, 99 Ill. 2d at 391-92). Furthermore, Barbara fails to adequately explain why she needed a full accounting of the Bright Start accounts in order to respond to or litigate the allegations in Rick's petition, which alleged that she violated previous court orders by withdrawing money from the Bright Start accounts without Rick's written consent. Rick alleged that the accounts had roughly $112,000 in January 2017 and zero balances in December 2019, and that Barbara did not get his written consent to make any withdrawals that were not ordered by the circuit court. The circuit court concluded, after hearing evidence that we have not been made privy to, that Barbara was in indirect civil contempt for not complying with the judgment of dissolution of marriage, and that she needed to pay Rick $31,000, well shy of the $120,000 that Rick sought in total. Any disputes over the remaining amounts will presumably be handled in due course. Barbara has not presented us with an adequate record from which we might conclude that the circuit court abused its discretion by refusing to grant Barbara a continuance to issue a subpoena for the Bright Start accounts' records.

¶ 21                                  III. CONCLUSION

¶ 22     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 23     Affirmed.