2022 IL App (1st) 210407-U

SIXTH DIVISION
March 31, 2022

No. 1-21-0407

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| BARBARA ANDERSEN f/k/a Barbara Gimbel, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 D 1514 |
| | ) | |
| RICK GIMBEL, | ) | The Honorable |
| | ) | Matthew Link, |
| Respondent-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justices Harris and Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's judgment granting Rick's attorney fee petitions under section 508(b) of the Marriage Act and awarding Rick's counsel a total of $32,815.94 in attorney fees.

¶ 2    Petitioner, Barbara Andersen, an attorney representing herself, appeals from the circuit court's order granting respondent, Rick Gimbel's, petitions for attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508(b) (West 2018)). We affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     This is Barbara's fourth appeal from orders entered in these postdissolution of marriage proceedings. In previous appeals, we, in relevant part, affirmed the circuit court's judgment following a bench trial that Barbara transfer Bright Start 529 education savings accounts (Bright Start accounts) to Rick and to reimburse Rick $1500 for fees he paid for the trial testimony of Phyllis Amabile, M.D., the court-appointed child evaluator (*Andersen v. Gimbel*, 2019 IL App (1st) 190159-U (*Andersen I*)); affirmed the circuit court's judgment finding Barbara in indirect civil contempt for failing to reimburse Rick for Dr. Amabile's fee, and dismissed the remainder of her appeal (*Andersen v. Gimbel*, 2020 IL App (1st) 191480-U (*Andersen II*)); and affirmed the circuit court's judgment finding Barbara in indirect civil contempt for making unauthorized withdrawals from the Bright Start accounts (*Andersen v. Gimbel*, 2020 IL App (1st) 200612-U, ¶¶ 4-6 (*Andersen III*)). In this appeal, Barbara raises several arguments challenging the circuit court's judgment granting Rick's petitions for attorney fees under section 508(b) of the Marriage Act for fees incurred in enforcing the parties' dissolution judgment and the circuit court's order requiring Barbara to reimburse Rick for Dr. Amabile's fee and to turn over control of Bright Start accounts to Rick.

¶ 5     Before we set forth the facts giving rise to this appeal, we address Rick's motion to strike Barbara's statement of facts. He argues Barbara's appellate brief does not comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which requires an appellant to present "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment ***." He asks that we either strike Barbara's statement of facts from her brief or disregard her statement of facts in its entirety. Barbara did not respond to the motion, and we

2

ordered the motion taken with the case. We agree with Rick that Barbara's statement of facts does not comply with Rule 341(h)(6) and elect to disregard her statement of facts its entirety.

¶ 6    Our supreme court's rules are neither aspirational nor mere suggestions, but instead "have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Kicke*, 166 Ill. 2d 204, 210 (1995). We may strike a statement of facts when the party's rule violations hinder our review. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009). This court has the inherent authority to strike a brief that does not comply with the rules and dismiss the appeal. *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). Common practice in our courts is to simply disregard inappropriate or unsupported factual statements where the violations are minor and do not hinder review. See, *e.g.*, *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 10 n.4 (declining to strike statement of facts but disregarding any "inappropriate argumentative statements"); *Metzger v. Brotman*, 2021 IL App (1st) 201218, ¶¶ 24-31 (same); *Deutsche Bank Trust Co. Americas as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15 v. Sigler*, 2020 IL App (1st) 191006, ¶ 28 (same). But where the violations are severe and hinder review, we have struck appellate briefs and dismissed the appeal. *Hall v. Naper Gold Hospitality LLC*, 2011 IL App (2d) 111151 (dismissing appeal due to "flagrant" and "appalling" violations of Rule 341); *McCann v. Dart*, 2015 IL App (1st) 141291 (striking brief and dismissing appeal where appellant's brief was "completely deficient").

¶ 7    Barbara's statement of facts is biased and argumentative to the point of absurdity. She begins by explaining that Rick filed attorney fee petitions that the circuit court granted, which is an appropriate factual statement. But that is where a dispassionate factual recitation ends. She immediately argues that the parties' dissolution judgment precludes attorney fee awards and

requires mediation for contested matters, and that neither Rick nor the circuit court explained why those provisions did not bar the underlying proceedings. She then argues there was no explanation why the parties' dispute over the Bright Start accounts was not sent to mediation, and that she should have been allowed discovery to demonstrate that Rick violated Rule 137. She decries the lack of citations to legal authority in Rick's petitions for rules to show cause and for attorney fees and complains that the circuit court signed orders drafted by Rick's counsel while disregarding her proposed orders. She asserts the circuit court offered no explanation as to why it awarded attorney fees to Rick's counsel rather than Rick, and then recites at length her own hearing testimony regarding her lack of income to pay fee awards and Rick's alleged interference with the sale of her condominium, which "interfered with her ability to generate substantial income relative to her efforts on the Forrest Fenn puzzle in New Mexico."[1] She then, under the heading "The Trial Court Did Not Explain Why It Did Not Consider its Finding That Andersen Was 'Severely Mentally Ill' Relative to Its Contempt Finding and the Attorney Fee Petitions," includes a nearly two-page block quote—apparently from the underlying hearing—in which Barbara argues with the trial judge that she, according to Rick's counsel and the "law of the case," was mentally ill, which should have been considered for the purposes of the fee petitions.

¶ 8    Instead of fairly explaining the progression of events in the circuit court, Barbara has presented a subjective and completely biased perspective on the proceedings below. We are left with little understanding of the facts and issues, other than that Rick filed petitions for attorney fees, which Barbara opposed, and the circuit court granted the petitions after a hearing. We have

---

[1]During his lifetime, Forrest Fenn hid a treasure chest in the Rocky Mountains and wrote a poem with clues as to the chest's location. https://www.npr.org/2016/03/13/469852983/seeking-adventure-and-gold-crack-this-poem-and-head-outdoors (last visited Mar. 24, 2022). Barbara's effort to find Forrest Fenn's treasure—as well as lawsuits she filed after someone else discovered the treasure—is well documented in the media. See, *e.g.*, https://www.nytimes.com/2020/12/07/us/forrest-fenn-treasure-chest.html (last visited Mar. 24, 2022).

previously noted Barbara's refusal to comply with Rule 341. In *Andersen I*, we disregarded Barbara's entire statement of facts due to her noncompliance with Rule 341, finding it "biased," and that she "omit[ed] virtually all the evidence that was before the circuit court that is unfavorable [to] her." 2019 IL App (1st) 190159-U, ¶ 5. In *Andersen II*, we found that Barbara forfeited an argument for failing to cite to the record to support her statement of facts. 2020 IL App (1st) 191480-U, ¶ 19. And in *Andersen III*, we expressly advised Barbara to familiarize herself with our supreme court's rules governing civil appeals after she improperly presented a "summary of events" of a hearing for which she presented no report of proceedings. 2020 IL App (1st) 2020612-U, ¶ 12-13. Barbara clearly did not heed our observation that her "obstinate disregard for our supreme court's rules governing civil appeals is cause for concern," or our advice that she "familiarize herself with those rules in any future appeals she pursues in our courts." *Id.* ¶ 14. Her continued disregard for the rules demonstrates a lack of professionalism and respect for this court. We expressly caution Barbara that her failure to comply with our supreme court's rules governing appellate briefs in future appeals may be met with outright dismissal, given our repeated observations of her noncompliance with the rules.

¶ 9     We now set forth the relevant facts gleaned from our prior decisions, Rick's appellate brief, and the record on appeal. In our most recent decision, we summarized the first two appeals as follows:

> "In [*Andersen I*], Barbara appealed numerous portions of the circuit court's judgment following a bench trial. In relevant part, the circuit court ordered Barbara to transfer [the] Bright Start *** accounts *** to *** Rick ***, and to reimburse Rick $1500 for fees he paid for the trial testimony of Phyllis Amabile, M.D., the court-appointed child evaluator. [Citation.] We affirmed the circuit court's

judgment in all respects after finding that Barbara forfeited all her appellate arguments. [Citation.]

While *Andersen I* was pending in this court, Rick pursued petitions for rules to show cause against Barbara for failing to (1) reimburse him for Dr. Amabile's fee, (2) transfer the Bright Start accounts to Rick, and (3) provide information to Rick about the Bright Start accounts balances. The circuit court found Barbara in indirect civil contempt for failing to reimburse Rick for Dr. Amabile's fee and ordered Barbara to pay Rick $1500 to purge the contempt. The circuit court separately found Barbara in direct civil contempt for refusing to transfer the Bright Start accounts to Rick, but the circuit court did not enter any sanction and eventually stayed the direct civil contempt proceedings due to the pendency of *Andersen I*. The circuit court held Barbara in indirect civil contempt for failing to provide any information to Rick about the Bright Start accounts balances, but Barbara subsequently purged herself of the indirect civil contempt finding by testifying in open court that the accounts had zero balances.

In [*Andersen II*], Barbara sought review of all three of the circuit court's contempt findings. We affirmed the circuit court's indirect civil contempt finding regarding Dr. Amabile's fee. [Citation.] We dismissed the remainder of Barbara's appeal for lack of appellate jurisdiction because no sanction had been imposed on the direct civil contempt finding and Barbara's challenge to the indirect civil contempt finding was moot since she had purged herself of the contempt with respect to the Bright Start accounts' balances. [Citation.]" *Andersen III*, 2020 IL App (1st) 200612-U, ¶¶ 4-6.

¶ 10    While *Andersen II* was pending in this court, Rick filed another petition for rule to show cause—which was the subject of *Andersen III*—alleging Barbara had withdrawn substantial sums from the Bright Start accounts without his written consent, in violation of the parties' judgment of dissolution of marriage. *Andersen III*, 2020 IL App (1st) 200612-U, ¶ 7. The circuit court found Barbara in indirect civil contempt and ordered her to pay $32,601 to a Bright Start account as a partial purge. *Id.* ¶ 8. We affirmed on appeal, finding the circuit court did not err by denying Barbara's motion to strike Rick's petition for lack of standing, and that Barbara either failed to present coherent legal arguments or an adequate record on appeal to support her remaining contentions. *Id.* ¶¶ 14-20.

¶ 11    While *Andersen III* was pending in this court, Rick began filing a series of petitions in the circuit court. Relevant here, Rick filed two petitions for attorney fees and costs pursuant to section 508(b) of the Marriage Act (750 ILCS 5/508(b) (West 2018)), and a supplement to his second petition, along with a petition for rule to show cause against Barbara. In his June 9, 2020, petition for attorney fees, Rick alleged the circuit court found Barbara in direct civil contempt for refusing to comply with the circuit court's order requiring her to transfer control of the Bright Start accounts to Rick and in indirect civil contempt for failing to pay Dr. Amabile's fee, causing Rick "to incur unnecessary substantial fees in which he is entitled to compensation pursuant to [s]ection 508(b)." He further alleged that section 508(b) of the Act "mandates an award of attorney's fees when a party is found in contempt." He sought $11,137.25 in attorney fees and costs and attached his counsel's affidavit to support the fee request.

¶ 12    In his December 31, 2020, petition for attorney fees, Rick alleged the circuit court found Barbara in indirect civil contempt for withdrawing funds from the Bright Start accounts without his written consent, causing him "to incur unnecessary substantial fees in which he is entitled to

compensation pursuant to [s]ection 508(b)." He sought $18,431.38 in attorney fees and costs and attached his counsel's affidavit to support the fee request. On March 3, 2021, Rick filed a supplement to his December 31, 2020, fee petition, noting that additional proceedings were held relative to the Bright Start contempt proceedings, and revised the amount of attorney fees and costs incurred from $18,431.38 to $23,141.19.

¶ 13    In his July 6, 2020, petition for rule to show cause, which is not at issue in this appeal, Rick alleged that on March 16, 2020, the circuit court ordered Barbara to pay Rick's counsel $2600 within 30 days or to make other arrangements. Rick alleged Barbara failed to pay the $2600. Rick pointed to a Chicago Tribune article estimating that Barbara estimated she spent "$10,000 to $30,000" hunting for Forrest Fenn's treasure, and "paid $4,000 just to put her furnishings in storage in Chicago as she all but moved to New Mexico on her most recent trip." See https://www.chicagotribune.com/nation-world/ct-nw-treasure-chest-rocky-mountains-forrest-fenn-20200608-xltbeao5zvbkjiby732x73fhxe-story.html (last visited Mar. 24, 2022).

¶ 14    Barbara filed various responses to Rick's petitions. She filed a motion to dismiss Rick's petition for a rule to show cause for failing to pay the $2600 to Rick's counsel, alleging that Rick "has a judgment for fees" and "has already placed a lien against [Barbara's] home." She filed a motion to dismiss the first attorney fee petition, arguing there was no "substantive legal argument" supporting the request and that Rick failed to support any of the factors bearing on the reasonableness of the fees.[2] She contended she offered to take the dispute to mediation, which was refused. She filed a motion to dismiss Rick's second petition for attorney fees, along with a motion for sanctions against Rick and his attorney. She explained that while *Andersen III* was pending on

---

[2]Barbara's motion also contains the claim that it was the "law of the case" that she was " 'severely' mentally ill," which we address below. See *infra* ¶¶ 39-44. Her motion is also replete with unprofessional invective, calling Rick's counsel a "former shady alderman turned shady divorce attorney" whose petition for fees "is saying award me fees because I'm a harassing pest."

appeal, the circuit court permitted her to take discovery on who contributed to the Bright Start accounts. She argued the records she obtained through discovery showed Rick never made any contributions to the Bright Start accounts and that Barbara made "substantial" postjudgment contributions to those accounts.

¶ 15   On January 25, 2021, the circuit court entered an agreed order. The circuit court first ordered Barbara to pay $31,601 to purge the circuit court's March 16, 2020, contempt order, which was one of the subjects of *Andersen III*. See 2020 IL App (1st) 200612-U, ¶ 8. Second, the circuit court ordered Barbara to pay an additional $50,000 to the Bright Start accounts and entered a memorandum of judgment in the amount of $50,000 in favor of Rick, which he could record against Barbara's condominium. Barbara was also ordered to sell her condominium. Third, the circuit court set a hearing date for Rick's first and second fee petitions and petition for a rule to show cause.

¶ 16   On March 11, 2021, the circuit court held a hearing over Zoom and heard testimony from Barbara and from Rick's attorney, Arthur Newman, and accepted numerous exhibits into evidence. After the hearing, the circuit court requested the parties submit draft orders. On March 12, the circuit court ordered, in relevant part, that Barbara had an additional 30 days to pay Rick $1000 to purge the contempt finding relative Dr. Amabile's fee. With respect to Rick's July 6, 2020, petition for rule to show cause, the circuit court declined to find Barbara in indirect civil contempt but ordered her to pay Newman $2600 and entered a memorandum of judgment in Newman's favor in that amount. The circuit court denied Barbara's motion to dismiss Rick's June 9, 2020, petition for attorney fees, and took Rick's petitions for attorney fees under advisement.

¶ 17   On March 24, 2021, the circuit court entered a written order granting Rick's fee petitions and denying Barbara's motion to dismiss the second fee petition. The circuit court found that it

held Barbara in indirect civil contempt on July 22, 2019, and in direct civil contempt on July 30, 2019, for failing to pay Rick $1500 for Dr. Amabile's fee and failing to transfer control of the Bright Start accounts to Rick, respectively, in violation of the circuit court's December 20, 2018, order requiring her to do so. Her failure to comply with the December 20, 2018, order "was without compelling cause or justification." The circuit court awarded Newman $11,137.25 in connection with enforcing the December 20, 2018, order. The circuit court further found that it held Barbara in indirect civil contempt on March 16, 2020, due to her unauthorized withdrawals of money from the Bright Start accounts, in violation of the parties' judgment of dissolution of marriage. Her failure to comply with the dissolution judgment "was without compelling cause or justification." The circuit court awarded Newman $21,678.69 in connection with enforcing the dissolution judgment. On March 25, 2021, the circuit court entered memorandums of judgment in Newman's favor in the amounts of $11,137.25 and $21,678.69.

¶ 18    Barbara filed a timely notice of appeal on April 12, 2021, identifying the dates of the orders or judgments being appealed as the March 12 and March 25 orders. The circuit court entered memorandums of judgment on March 12 and March 25, but the circuit court's judgment granting Rick's fee petitions was entered on March 24, 2021, which Barbara did not identify in her notice of appeal. However, we find this to be a scrivener's error that does not affect our jurisdiction, as it is clear from Barbara's notice of appeal that she was attempting to appeal the circuit court's March 24, 2021, judgment order.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Barbara identifies eight issues for our review. Rather than summarize them here, we will simply address her arguments in turn.

10

¶ 21    First, she contends the circuit court erred by allowing Rick to proceed on his fee petitions and petition for a rule to show cause because Rick failed to cite any legal precedent in his petitions, and Rick bore the burdens of production and persuasion. She raised a similar argument in *Andersen II*, in which she contended that Rick's petition for a rule to show cause did not cite any legal authority or make any assertion that she was able to pay. 2020 IL App (1st) 191480-U, ¶ 26. Notably, Barbara fails to cite any authority suggesting that either a petition for attorney fees under section 508(b) of the Act or a petition for rule to show cause must be supported by citations to authority. Section 508(b) provides

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party. If non-compliance is with respect to a discovery order, the non-compliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence. If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2020).

¶ 22    Here, Rick's fee petitions alleged that he incurred attorney fees because of Barbara's failure to comply with the circuit court's orders requiring her to reimburse Rick for Dr. Amabile's fee and to transfer control of the Bright Start accounts to Rick, and her violation of the dissolution

judgment by making unauthorized withdrawals of money from the Bright Start accounts. Rick alleged he was entitled fees under section 508(b), identified Newman's hourly fee, and attached Newman's supporting affidavit documenting the time expended on the services rendered. It not clear what else Barbara thinks is required to initiate proceedings under section 508(b) of the Act. Rick's fee petitions made factual allegations and asserted that the facts entitled him to attorney fees under section 508(b) of the Act. The same is true of the petition for rule to show cause: Rick alleged facts and asserted the facts justified finding Barbara in indirect civil contempt. It is axiomatic in Illinois that the sufficiency of a pleading depends on whether the factual allegations, taken as true, state a cause of action. Barbara does not identify any authority to support her contention that Rick was required to provide citations to case law to support the sufficiency of his pleadings. We see no error in the circuit court allowing Rick's petitions to proceed to a hearing, at which the circuit court would hear testimony and argument, and then decide whether the petition's allegations were true and whether there were any valid defenses.

¶ 23    Second, Barbara "requests that this Court bar [Rick] to [*sic*] try and offer precedent for the first time at this level relative to the attorney fee petitions." She cites Rule 341(h)(7) and numerous cases faulting parties for failing to cite relevant authority to support their appellate arguments. She also cites authority that a party may not raise arguments for the first time on appeal. She made similar arguments in *Andersen II* and *Andersen III*, in which she sought to prevent Rick from citing any authority because he failed to cite any authority in the circuit court. *Andersen II*, 2020 IL App (1st) 191480-U, ¶ 20; *Andersen III*, 2020 IL App 200612-U, ¶ 17. This argument—to the extent it is one—is misguided. First, Rule 341(h)(7) applies to appellate briefs, not circuit court filings. Nothing in Rule 341 states that a party may not cite authority on appeal that was not cited in the circuit court. Second, none of the cases Barbara cites stand for the proposition that an appellee

may only cite the authorities it cited in the circuit court. It has long been the rule in our reviewing courts that "[a]n appellee may raise any argument or basis supported by the record to show the correctness of the judgment, even though he had not previously advanced such an argument." *People v. P.H.*, 145 Ill. 2d 209, 220 (1991). We therefore reject Barbara's request to bar Rick from citing authority in defense of the circuit court's judgment.

¶ 24    Third, Barbara argues Rick's fee petitions were barred under the parties' dissolution judgment in which the parties agreed to waive contribution from one another. We disagree. Barbara relies on the following provision in the dissolution judgment:

> "Barbara and Rick shall be responsible for the payment of their respective attorneys' fees and costs incurred prior to and during this proceeding (including, but not limited to attorneys' fees incurred in the review, negotiation and execution of this Marital Settlement Agreement, the contemporaneously executed Parenting Agreement and this Litigation), and Barbara and Rick expressly acknowledge that he or she has been expressly advised of the right to contribution and a hearing on the issues of attorneys' fees, and the reasonableness thereof, and Barbara and Rick hereby waive his or her respective right to contribution against the other with respect to attorneys' fees and costs, and to any hearing thereon."

¶ 25    Barbara does not cite to—nor are we aware of—any authority suggesting that a waiver of contribution to attorney fees in an MSA precludes recovery of section 508(b) attorney fees incurred because of a party's failure to comply with an order or judgment without compelling cause or justification. Instead, Barbara cites *In re Marriage of Sheetz*, 254 Ill. App. 3d 695 (1993) for the general proposition that a marital settlement agreement is a contract and is binding on the court. Rick responds in part that he "never waived his future rights under section 508(b) to request

attorney's fees when [Barbara] violated court orders when the 2009 Judgment for Dissolution of Marriage was entered." Neither party fully develops any argument regarding how to interpret the contribution waiver in the MSA. Under the terms of the MSA, the parties mutually waived contribution to attorney fees and costs incurred "prior to and during this proceeding." The MSA provides no indication, however, that the parties intended to waive their rights to seek contribution from one another if the other party, without compelling cause or justification, failed to comply with a circuit court order or judgment, necessitating an enforcement effort. In other words, the parties' MSA was silent regarding whether a prevailing party was entitled to attorney fees in the event of a successful enforcement action. Based on the record before us and the arguments advanced by the parties, we see no reason why Rick could not pursue attorney fees under section 508(b) in connection with his enforcement efforts based on Barbara's failure to comply with the dissolution judgment and a circuit court order.

¶ 26    Fourth, Barbara argues that Rick did not present any evidence tending to show that her failure to comply with the circuit court's "Bright Start judgment" was without compelling cause or justification, and that any dispute over the amount she owed to the Bright Start accounts should have been sent to mediation, as required by the 2009 dissolution judgment.

¶ 27    We disagree with Barbara that Rick was required to mediate the dispute over how much she owed the Bright Start accounts. The mediation requirement Barbara relies on is set forth in paragraph 18 of the parties' joint parenting agreement, which does not cover disputes over the Bright Start accounts. Paragraph 18 of the joint parenting agreement, which was incorporated into the judgment of dissolution, provides:

> "If any conflicts arise between the parents as to any of the provisions of his
>
> Parenting Agreement or the implementation thereof, the complaining parent shall

first notify the other parent of the nature of the complaint and both Barbara and Rick shall make reasonable attempts to negotiate a settlement of the conflict. Whenever practicable under the circumstances, said complaints shall be made in written form and given or mailed to the other parent. The parent receiving said complaint shall, when practicable, reply to the complaint in a similar written form. If Barbara and Rick become in disagreement regarding any such major decision, either party will submit their dispute to mediation prior to initiating legal proceedings."

¶ 28    Barbara offers no explanation as to how an agreement to mediate matters covered by the joint parenting agreement extends to matters not covered by the joint parenting agreement. In her reply brief, she claims Rick's argument that the parties did not have an agreement to mediate disputes over the Bright Start accounts is a "form over substance argument," but both the form and substance of the mediation requirement show that it is inapplicable to disputes such as the amount Barbara owed to the Bright Start accounts. Barbara has not identified any statutory or contractual provision that required the parties to mediate the dispute over the amounts owed to the Bright Start accounts. The circuit court did not err by refusing to order mediation of the amount owed to the Bright Start accounts where the parties did not have an agreement to mediate the dispute.

¶ 29    We also reject Barbara's argument that Rick did not present any evidence tending to show that her failure to comply with the circuit court's "Bright Start judgment" was without compelling cause or justification. Rick's December 31, 2020, section 508(b) petition for attorney fees, which was supplemented on March 2, 2021, was based on Rick's efforts to enforce the 2009 dissolution judgment. On March 16, 2020, the circuit court adjudicated Barbara in indirect civil contempt for

making unilateral withdrawals from the children's Bright Start accounts, in violation of the 2009 dissolution judgment. As this court has explained,

> "finding a party in contempt for failing to comply with a court order implies a finding the failure to comply was without cause or justification, rendering mandatory the imposition of attorney fees per section 508(b). [Citation.] Specifically, because the primary prerequisite to any contempt finding is willful, contumacious conduct, it follows that a finding that a party is in contempt of court for failing to comply with a court's orders carries with it an implicit finding that the failure to comply was without cause or justification. [Citation.]" (Internal quotation marks and emphases omitted.) *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 38.

¶ 30    Here, on July 22, 2019, the circuit court found Barbara in indirect civil contempt for her failure to pay Rick $1500 for Dr. Amabile's fee and in direct civil contempt for failing to transfer control of the Bright Start accounts to Rick, in violation of the circuit court's December 20, 2018, order requiring her to do so, and on March 16, 2020, found Barbara in indirect civil contempt due to her unauthorized withdrawals of money from the Bright Start accounts, in violation of the parties' judgment of dissolution of marriage. Barbara appealed those contempt findings, and we affirmed the circuit court's judgments. Implicit in the circuit court's contempt findings was that Barbara's failure to comply was without cause or justification, so the imposition of attorney fees under section 508(b) was mandatory. Barbara is incorrect that Rick was required to demonstrate at the hearing that her failure to comply with the December 20, 2018, order and the dissolution judgment was without cause or justification, since the circuit court had already determined that

issue during the contempt proceedings. Instead, the hearing on Rick's fee petitions was limited to determining the reasonableness of Rick's attorney fees.

¶ 31    Fifth, Barbara argues that there was nothing to enforce—and thus no basis for a fee petition relative to the Bright Start accounts—until January 2021, when the circuit court determined how much she was required to reimburse Rick for the Bright Start accounts. Generally, she contends that Rick sought $126,941, but the parties subsequently agreed that the amount owed was $81,601, and thus Rick could not pursue attorney fees for enforcing the dissolution of judgment until the amount she owed was determined. That is clearly wrong. By unilaterally zeroing out the Bright Start accounts, Barbara violated the dissolution judgment, resulting in the circuit court finding her in indirect civil contempt. Rick then incurred attorney fees in his efforts to get Barbara to reimburse the accounts. While Barbara asserts that she only wound up owing $81,000 instead of $127,000— and thus her opposition to Rick's contempt petition based on the depletion of the Bright Start accounts was, as she claims, "correct"—she misses the obvious fact that she was held in contempt for withdrawing funds from the Bright Start accounts without Rick's consent, in violation of the dissolution judgment, a fact brought to light through Rick's efforts to enforce the terms of the dissolution judgment. We therefore reject Barbara's argument that there was nothing to enforce that might justify a section 508(b) fee petition until it was determined how much she was required to reimburse the Bright Start accounts.

¶ 32    Sixth, Barbara argues the circuit court erred by awarding attorney fees directly to Rick's counsel, Newman, and further argues that Rick and Newman "were engaged in an improper, unethical and prohibited contingency fee relationship relative to the contempt proceedings and fee petitions" because the fee petitions arose out of a domestic relations matter. She asserts the fee petitions were supported by affidavits "admitting" that Rick still "owed" attorney fees, the

petitions were only signed by Newman, and there was no testimony regarding the contractual arrangement between Rick and Newman.

¶ 33 Barbara's assertion that there was a contingency fee arrangement between Rick and Newman in connection with the enforcement efforts and fee petitions is pure speculation. The section 508(b) fee petitions directly asserted that Newman billed Rick hourly. In Rick's June 9, 2020, section 508(b) petition for attorney fees, Newman asserted that Rick was billed at an hourly rate of $375 per hour for in-court appearances and $325 per hour for non-court appearances, and according to his billing records, Rick owed $11,137.25 as of May 26, 2020, for work performed in connection with enforcing the circuit court's December 20, 2018, order. Newman's affidavit asserted that, according to his billing records—which included separate entries on numerous dates for specified work performed—he was owed $11,137.25. Likewise, Rick's December 31, 2020, section 508(b) attorney fee petition, which was supplemented on March 31, 2021, reflected the same hourly billing rate, and that according to Newman's records, Rick owed $18,431.38 as of December 29, 2020, and owed $23.141.19 as of February 2, 2021. The records attached to the section 508(b) petitions and the supplement—which were admitted into evidence during the hearing—reflect work performed on Rick's behalf in pursuing various petitions for rules to show cause, as well as fees incurred in defending the circuit court's judgments in *Andersen II* and *Andersen III*. Therefore, according to the section 508(b) petitions, Rick's counsel billed Rick for the time expended on enforcing the dissolution judgment and the circuit court's order requiring Barbara to pay Dr. Amabile's fee and transfer control of the Bright Start accounts to Rick. Barbara did not introduce any evidence tending to show that there was a contingency fee agreement between Rick and his counsel for the petitions for rule to show cause.

¶ 34    Barbara also misses the mark when she asserts that all contingency fee agreements in domestic relations matters are prohibited. She relies on Rule 1.5(d) of the Rules of Professional Conduct to assert that a contingency fee relationship between Rick and Newman would be improper. That is not correct. Rule 1.5(d)(1) prohibits "any fee in a domestic relations matter, the payment of or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof." Ill. R. Prof'l Conduct R. 1.5 (eff. Jan. 1, 2010). But as this court has observed, "[t]he rule on its face does not preclude contingent fee contracts in all cases bearing some relation to dissolution proceedings." *Schweihs v. Davis, Friedman, Zavett, Kane & MacRae*, 344 Ill. App. 3d 493, 497-98 (2003) (citing *In re Marriage of Wright*, 89 Ill. 2d 498, 501 (1982)). Here, Rick's fee petitions related to the enforcement of the dissolution judgment and a circuit court order and had nothing to do with securing a divorce or alimony or support or a property settlement. Instead, Rick was attempting to recoup attorney fees incurred in pursuing Barbara's noncompliance with the dissolution judgment and a circuit court order. Thus, assuming without deciding there were a contingency fee agreement in place between Rick and Newman, we fail to see how that would violate any public policy underlying Rule 1.5(d)(1).

¶ 35    Furthermore, to the extent Barbara argues that Rick needed to prove he had actually paid Newman before he could recover attorney fees, we note this court has found that the circuit court is not precluded from awarding attorney fees under section 508(b) even where a petitioner was employed by the attorney handling her case and was not actually billed for the attorney's time. *Putzler*, 2013 IL App (2d) 120551, ¶ 41; see also *In re Marriage of Brockett*, 130 Ill. App. 3d 499, 501 (1984) (permitting attorney fees where the petitioner was represented by a legal aid provider and not obligated to pay attorney fees). Here, Newman submitted evidence of the amount of work

he performed for and billed to Rick, which represented the value of Newman's services for enforcing the dissolution judgment and the circuit court's order. Barbara has not persuaded this court that there was anything inappropriate about the fee arrangement between Rick and his counsel, or that attorney fees were not or should not have been appropriate under section 508(b).

¶ 36 Finally, Barbara does not identify any authority tending to show that the circuit court abused its discretion or otherwise erred by awarding fees directly to Newman. Under section 508(b), Rick was entitled to reasonable attorney fees incurred in the enforcement proceedings to defray the costs of bringing the enforcement action. The circuit court, upon receiving evidence that Rick had been billed by his attorney for the work performed and that the attorney had not been paid, could order the fees paid directly to the attorney. Nothing in the record suggests Rick had already paid Newman such that an award to Newman would result in a double recovery of his fees. As Barbara herself argues, the fee petitions asserted that Rick owed Newman the fees.

¶ 37 Seventh, Barbara argues the circuit court abused its discretion by repeatedly sustaining Rick's objections to Barbara's questions regarding the reasonableness of Newman's legal work in collecting Dr. Amabile's fee. She complains that the circuit court failed to consider the reasonableness of $11,137.25 in attorney fees to collect a $1500 judgment. She essentially faults Newman for pursuing a petition for rule to show cause and incurring attorney fees "as opposed to simply waiting for payment" and "simply waiting for [Barbara] to make income." Barbara fails to develop any legal argument on this point, and completely avoids the testimony and evidence submitted at the hearing showing that the $11,000 in attorney fees were attributable to the efforts to collect the $1500 as well as enforcing the circuit court's order that Barbara transfer control of the Bright Start accounts to Rick, which included an appeal. Barbara does not present any argument assessing the reasonableness of the fees incurred, nor does she raise any specific arguments

regarding which objections the circuit court erroneously sustained. We find Barbara's argument does not present any basis from which this court might disturb the fee award.

¶ 38    Eighth, Barbara agues the circuit court erred by disregarding her testimony regarding her income and Rick's "interference with same." She, however, presents no legal argument tending to show the circuit court erred in any manner. She likewise fails to explain why her income is relevant; nothing in section 508(b) relates to the ability to pay, but instead focuses on whether there was a justifiable noncompliance with an order or judgment and the reasonableness of the attorney fees incurred in the enforcement efforts. We find Barbara's argument does not present any basis from which this court might disturb the fee award.

¶ 39    Lastly, we reach Barbara's most concerning argument, captioned "The Trial Court Erred in Not Considering the Law of the Case, i.e.[,] That Andersen is Purportedly 'Severely Mentally Unwell[,]' Relative to His Contempt Findings and the Attorney Fee Petitions." This is not the first time she has made an argument based on her mental health. See, *e.g.*, *Andersen I*, 2019 IL App (1st) 190159-U, ¶ 33 ("Finally, Barbara asserts that the circuit court erred in denying with prejudice her request for maintenance from Rick. She asserts that '[h]ere, [Rick]/Newman take the position that [Barbara] has been mentally unwell since the time of the divorce. If this [c]ourt decides to accept that story, does that not mean that [Barbara's] waivers of child support and maintenance are void for want of mental capacity?' ") (Alterations in original.)

¶ 40    For context, in *Andersen I*, we addressed, in relevant part, the circuit court's finding following a custody trial that Rick should have sole legal custody and control of the parties' minor children. The circuit court reached that conclusion after considering the applicable factors in section 602.7(b) of the Marriage Act (750 ILCS 5/602.7(b) (West 2016)). *Andersen I*, 2019 IL App (1st) 190159-U, ¶¶16-19. In considering section 602.7(b)(7) of the Marriage Act relating to "the

21

mental and physical health of all individuals involved" (750 ILCS 5/602.7(b)(7)), the circuit court quoted Dr. Amabile's report, in which Dr. Amabile "wrote that '[m]ost of the difficulties this family has experienced during the past seven or eight years are a consequence of significant, untreated mental illness in [Barbara]. Her episodic symptoms have caused all four of them instability, emotional upheaval, and consequences from her poor judgment and poor impulse control.'" (Alterations in original.) *Andersen I*, 2019 IL App (1st) 190159-U, ¶ 17. Barbara disagreed with Dr. Amabile's assessment but did not present any competing evidence regarding her mental health. In this appeal, Barbara takes the position that the circuit court's reliance on Dr. Amabile's report in assessing one of the factors for determining whether to reallocate custody of minor children means that it is law of the case that she is indeed mentally unwell, so she lacked the capacity to act contumaciously, that it is unreasonable for Rick to harass her with contempt and fee petitions and interfere with her income stream, and that her mental health should have been considered in adjudicating the section 508(b) attorney fee petitions. She concludes this section of her argument with a question: "So which is it: was [Barbara] wronged in being deprived of her children or is the trial court wrong in finding her now in contempt and the subject of substantial attorney fee petitions?"

¶ 41    Ultimately, however, the issue of Barbara's mental health is irrelevant for our purposes. First, nothing in the record before us establishes that Barbara is indeed "severely mentally unwell" to the point of lacking the capacity to understand the nature of the proceedings or the consequences of her own actions. She asserts that Rick and his counsel have taken the position that she is "severely mentally unwell" and reasons that, if that is true, then she is not accountable for her actions, but if it is not, then she should not have lost custody of her children. We note that during the hearing on the fee petitions, Barbara asserted she disagreed with any characterization that she

is "severely mentally unwell." Because she is not taking the position that she is "severely mentally unwell" as a defense against the imposition of section 508(b) attorney fees, we fail—as the circuit did—to see how her mental health is relevant.

¶ 42    Second, a section 508(b) hearing is limited to determining whether a party acted without compelling cause or justification—an issue that was resolved here when the circuit court previously found Barbara in contempt—and the reasonableness of the attorney fees. If Barbara wanted to assert some sort of mental health defense—which she expressly does not—the time to do so would have been at the contempt proceedings, which conceivably could have persuaded the circuit court that she should not be held accountable for her actions. But that did not happen.

¶ 43    And finally, Barbara misses the mark when she asserts that it is law of the case that she is "severely mentally unwell." "The law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal." *In re Christopher K.*, 217 Ill. 2d 348, 363 (2005). " 'The doctrine applies to questions of law and fact and encompasses a court's explicit decisions, as well as those decisions made by necessary implication.' " *Lurie v. Wolin*, 2017 IL App (1st) 161571, ¶ 26 (quoting *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 2014 IL App (1st) 121895, ¶ 17).

¶ 44    Here, the circuit court never explicitly or implicitly ruled that Barbara was "severely mentally unwell." The only time the circuit court expressly considered Barbara's mental health was during the custody trial when it considered Dr. Amabile's unrebutted opinion as to Barbara's mental health, which was just one factor in deciding the custody issue. In other words, the circuit court never made a finding of fact or conclusion of law that Barbara was "severely mentally unwell," but instead the circuit court considered Dr. Amabile's opinion regarding Barbara's mental health as part of a comprehensive consideration of factors leading to a custody judgment. Because

the circuit court never decided that Barbara was "severely mentally ill," we did not render any judgment in *Andersen I* determining whether Barbara was "severely mentally ill." Since this court never made any judgment on that issue, it cannot be law of the case that Barbara is "severely mentally unwell."

¶ 45    In sum, we cannot say that the circuit court erred in any manner when it granted Rick's petitions for attorney fees under section 508(b), and we affirm the circuit court's judgment in all respects.

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 48    Affirmed.